(Nos. 65919, 66096 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. REYNALDO SEGARA, Appellee.

*Opinion filed December 6, 1988.—Rehearing denied*
*January 30, 1989.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Thomas V. Gainer, Jr., Kenneth T. McCurry, Nancy Black, Inge Fryklund and Al Tomaso, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, and Karen Daniel, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

JUSTICE CUNNINGHAM delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant, Reynaldo Segara, was found guilty of eight counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, pars. 12—14(a)(2), (a)(3), (a)(4)), one count of aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(a)) and one count of unlawful restraint (Ill. Rev. Stat. 1985, ch. 38, par. 10—3(a)). The circuit court

subsequently merged the convictions for aggravated battery and unlawful restraint and sentenced defendant to 18 years' imprisonment for aggravated criminal sexual assault. Defendant appealed. The appellate court vacated six counts of the aggravated criminal sexual assault pursuant to *People v. King* (1977), 66 Ill. 2d 551, and then vacated one of the remaining two counts of aggravated criminal sexual assault pursuant to *People v. Cox* (1972), 53 Ill. 2d 101. In a Rule 23 order (107 Ill. 2d R. 23), the appellate court affirmed the sentence and remanded the cause for the circuit court to "clarify its sentence by indicating the particular aggravated criminal sexual assault count upon which defendant's conviction and sentence are based." (159 Ill. App. 3d 1169 (unpublished order).) Defendant appealed, and we granted his petition pursuant to Supreme Court Rule 315 (107 Ill. 2d R. 315).

The record reveals the following facts. On February 13, 1985, the victim, Anna Marroquin, lived by herself in a studio apartment which did not have a bathroom. The bathroom was located outside of her apartment at the end of the hallway. Defendant and the victim had been friends for four or five years. Their relationship was that of a brother and sister or cousins. The victim did not date or at any time have sexual relations with defendant. Whenever she received her paycheck, she would occasionally treat him to dinner or have him come to dinner at her apartment.

Around 10:30 p.m. on February 13, defendant knocked on the victim's door and stated that he wanted to talk to her. She responded that it was too late and she had to work the next day. At that point, defendant pushed open the door, pushed the victim inside and then chained the door. Defendant began to call the victim all sorts of expletive names and to hit her in the face with his fist. After he struck the victim twice in the face, he threw her to the floor, took off his shoe and hit her on

the head with it. From the shoe assault, the victim's head started to bleed. When she began to stand up, defendant pushed her against the wall, then threw her to the bed. During the incident he told her that he was going to "fuck" her and threatened her. As he began to pull off his pants, he threatened her with a pair of scissors. The victim eventually took her own pants off. Defendant then vaginally raped her and then turned her around and performed fellatio, ejaculating in her face. After the incident, the victim, crying and bleeding, was able to put her pants back on, and around 7 a.m. the following day, she convinced defendant that she would not tell anyone; that she had to go to work; that she forgave him; and that she would put on a lot of makeup. Defendant told her she could leave. The victim's eyes were black and she was bleeding from her head.

As she left the apartment building, she found a police squad car with officers inside. They told her that they were too busy and gave her a number to call. She then walked to the train station, called the police station, and within five minutes two officers in a squad car arrived. After she told them that she had been raped, they took her back to her apartment. Just as they arrived, defendant was standing in the hallway wearing the victim's pink robe. The officers placed defendant under arrest, but as they left with defendant, defendant threatened to kill the victim. The victim was subsequently taken to the hospital and treated for her injuries, which included a black eye, a swollen and bleeding nose, and marks on the back of her arms and her back. At the time of the incident, the victim was pregnant but a week later she miscarried the fetus.

Two police officers accompanied the victim back to her apartment after she left the hospital. During the search, they found the victim's blood-saturated blouse in the bathroom sink soaking. They also found blood stains

on the wall, floor and on a pillow in her apartment. Blood stains were also found on her pink robe.

Under cross-examination, she stated that she moved into the apartment by herself three months earlier and lived by herself the whole time. She met defendant when she was single and not while she was married. She invited defendant over for dinner at her apartment approximately three to four times and once she spent time with him outside of her apartment. When defendant forced himself into her apartment, she screamed when he put the chain lock on the door, and when he began to hit her, she screamed for help in English and Spanish.

Defendant's only assignment of error concerns whether this court should remand this cause for resentencing since the appellate court vacated all but one conviction. Defendant seeks remandment for resentencing to determine the extent to which the vacated convictions determined his sentence since the appellate court only remanded this cause for clarification regarding which count of aggravated criminal sexual assault exists.

This court finds that it must first determine whether the appellate court properly vacated all but one conviction. In this court's review, it must reevaluate the holdings in its various decisions and determine the direction of the court.

In *People v. Cox* (1972), 53 Ill. 2d 101, this court, with six justices taking part in the decision, and with one justice dissenting, held that where two sentences imposed stem from two acts of indecent liberties based upon a single transaction, involving a single victim and occurring simultaneously, only one conviction and sentence can be imposed. The court based its opinion on its reading of the 1965 indecent liberties with a child statute and on the rule of lenity which states:

"When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell v. United States* (1955), 349 U.S. 81, 83, 99 L. Ed. 905, 910, 75 S. Ct. 620, 622.

After *Cox*, this court dealt again with the issue in *People v. King* (1977), 66 Ill. 2d 551, and departed from the strict interpretation announced in *Cox* and aligned its holdings with the United States Supreme Court's holdings that multiple convictions from a single "transaction" or act are proper. This court rejected the independent motivation test for determining whether any acts committed during a single transaction are separate and distinct offenses authorizing multiple convictions and sentences. This court held that under section 5—8—4(a), a defendant's criminal objective is only relevant in determining whether consecutive sentences can be imposed (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4(a)) and subsequently found that there were "no constitutional limitations against multiple convictions and concurrent sentences for different offenses arising from multiple acts which are *incidental to* or motivated by some greater criminal objective." (Emphasis added.) (66 Ill. 2d at 565.) This court concluded that:

"Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. *Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. 'Act,' when used in this sense, is*

intended to mean any overt or outward manifestation which will support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." (Emphasis added.) (66 Ill. 2d at 566.)

This court then held that "the offenses of rape and burglary are based on separate acts, each requiring proof of a different element." 66 Ill. 2d at 566.

In following with the *King* case and in this court's attempt to define a "different" offense, this court, without addressing the *Cox* case, held in *People v. Myers* (1981), 85 Ill. 2d 281, that the defendant's actions of moving the knife twice from the first victim's neck while threatening a second victim, thereby interrupting his initial attack on the first victim, and resulting in cutting the second victim's neck, supported two convictions and concurrent sentences. Defendant's actions supported convictions for armed violence and attempted murder. This court found that although the two separate invasions of the first victim's body were closely related in time and in the same area of the neck, the acts were not one physical act.

In a later case, this court held that convictions for armed violence and its underlying felony, aggravated battery, were improper (*People v. Donaldson* (1982), 91 Ill. 2d 164, 170) because the convictions were based on the same physical act. In another case, released shortly after *Donaldson*, this court affirmed the decision of the appellate court vacating the conviction and sentence for armed violence based on the single act of rape because the defendant was also convicted of and sentenced for rape. *People v. Mormon* (1982), 92 Ill. 2d 268.

In view of the various decisions, this court concludes that the trend reveals that:

"[I]f a defendant commits more than one criminal act in an episode or transaction, he may be prosecuted for more than one offense unless the charges involve precisely the same physical act. If the physical acts are distinct, the defendant can be convicted of both, but only concurrent sentences can be imposed. If exactly the same physical act does form the basis for more than one offense, a defendant may still be prosecuted for each offense, but only one conviction and sentence may be imposed." Eisenberg, *Multiple Punishments for the "Same Offense" in Illinois*, 11 S. Ill. U. L.J. 217, 236-37 (1987).

In light of the trend of this court and the conclusions reached, this court finds that the appellate court properly vacated six of the eight aggravated criminal sexual assault convictions but improperly vacated one of the remaining two convictions for aggravated criminal sexual assault. The facts reveal that after defendant forcibly entered the victim's room and after he severely beat her, he committed two acts of criminal sexual assault. For defendant to claim that only one rape occurred, "demeans the dignity of the human personality and individuality." (*Pruitt v. State* (1978), 269 Ind. 559, 565, 382 N.E.2d 150, 154.) To the victim, each rape was "readily divisible and intensely personal; each offense is an offense against *a person.*" (Emphasis in original.) (269 Ind. at 565, 382 N.E.2d at 154.) To permit a defendant to rape an individual several times over a period of time in the same place with little or no break between each act deprecates the heinous and violent nature of each act and the effect each act has upon the victim. Defendant committed two acts each of equal value (Class X felonies) and appropriately may be prosecuted and convicted for each act. Furthermore, this court finds that although the legislature did not intend for defendant to receive several convictions for each act, the General Assembly did go to great lengths to ensure that each act of rape, how-

ever committed, is punished. Rape is unlike other offenses: with each act, the victim's psychological constitution and most intimate part of her being have been violently invaded. Thus, this court finds that in this case conviction for each act of rape is appropriate and does not offend defendant's constitutional right against double jeopardy.

In conclusion, this court finds that only two convictions for aggravated criminal sexual assault are permitted and remands this cause for clarification regarding which two counts of the eight counts of aggravated criminal sexual assault are retained and remands also for sentencing on the second conviction because sentencing is a necessary component of a judgment of conviction. (*Ball v. United States* (1985), 470 U.S. 856, 861, 84 L. Ed. 2d 740, 746, 105 S. Ct. 1668, 1672; *United States v. Hudson* (1812), 11 U.S. (7 Cranch) 32, 34, 3 L. Ed. 259, 260.) Moreover, in view of *King*, the sentences can only run concurrently and, as such, there is no enhancement-of-penalty claim and no double jeopardy claim.

<div align="right">

*Affirmed in part;*
*reversed in part;*
*remanded.*