THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KARL ROBERTS, Defendant-Appellant.

First District (3rd Division)   No. 1—87—2188

Opinion filed April 19, 1989.

314

Michael J. Pelletier and Martin Carlson, both of State Appellate Defender's Office, of Chicago (Stacy J. Krebs, of Chapman & Cutler, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Renee Goldfarb, and Mark A. Shlifka, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA* delivered the opinion of the court:

Following a jury trial, defendant Karl Roberts was found guilty of aggravated criminal sexual assault and criminal sexual assault. The trial court entered judgment on the aggravated criminal sexual assault count and sentenced defendant to an extended term of 60 years' im-

---

*Justice McNamara participated in this opinion prior to his transfer to the sixth division.

risonment. Defendant appeals, contending that the jury was not instructed that the State must prove the element of nonconsent beyond a reasonable doubt; that the State failed to establish the element of bodily harm; that the trial court improperly admitted statements regarding defendant's recent release from prison; and that the extended term sentence is improper.

The victim testified that on June 28, 1985, she left her home at about 8:30 p.m. with two girl friends, Lucille Walker and Janell Fletcher. In the early morning hours, the victim and Lucille met defendant and Tina Hicks outside of a tavern. Lucille and Tina knew defendant, but the victim did not know him. The victim left the tavern to walk home alone. The victim and Lucille testified that defendant followed the victim. Lucille testified that when the victim left the tavern she had no facial swelling, no arm injuries, and was fully dressed.

The victim, who is four feet nine inches tall and weighs 108 pounds, testified that defendant approached her from behind, demanded sex, put one hand over her mouth and the other hand around her waist, and dragged her into an alley. When the victim screamed, defendant threatened to kill her. The victim testified that defendant said he wanted sex because "he had just got out of the penitentiary, and I was going to give him some."

The victim testified that defendant struck her on the left side of her face with his fist, and threw her down to the cement, where she scraped her right elbow. Defendant ripped off some of her clothes. Defendant forced vaginal intercourse and then fellatio upon the victim. When the victim resisted again, defendant threw her back down onto her hands and knees and again raped her vaginally.

The police responded to a telephone call reporting the victim's screams and drove into the alley at 3:30 a.m. Officer Ivan Jefferson observed defendant jump up, pull on his pants, and run. The victim emerged from the garage area wearing shoes and a shirt, and crying hysterically. The victim told Jefferson she had just been raped, and she described defendant. The victim was treated at the hospital and returned home at about 5:45 a.m. on June 29. Later that day, she noticed her face was swollen. That afternoon, Tina gave defendant's name to the victim, which she in turn gave to the police. On June 30, she identified defendant in a photo array.

Upon learning that defendant had just been released from the penitentiary, Officer Kenneth White was able to obtain a last known address, which was several doors away from where the rape occurred. The Illinois Department of Corrections parole division gave the police a current address, and defendant was arrested. On July 1, the victim

identified defendant in a lineup.

Lena Guiterrez, an emergency room nurse, testified as to the victim's care after she was brought to the hospital. She told Guiterrez she had been raped and hit in the face. The victim's right elbow was bandaged, and she received a tetanus shot. Officer Rick Roberts testified that the vaginal smears tested positive for the presence of spermatozoa.

At trial, defendant testified that he and the victim walked away from the tavern arm in arm and he agreed to pay her $10 to have sex with him. They had sex in a stranger's backyard, but the victim then demanded more money. She threatened that he would pay one way or another. Defendant denied that he ejaculated. When they had finished, they both dressed and left in different directions. Defendant did not tell this to the police because he did not have proper counsel. He denied telling the victim he had just been released from prison; however, defendant stated he had been released on March 22, 1985.

In rebuttal, an assistant State's Attorney testified that he interviewed defendant on July 1, 1985. Defendant stated that he did not have sex with the victim and that they parted company when they reached the alley.

Defendant initially contends that the jury instructions were inadequate as a matter of law because they required defendant to prove consent beyond a reasonable doubt. The jury was instructed, without objection, as follows:

"To sustain the charge of aggravated criminal sexual assault, the State must prove the following propositions:

*First*: That the defendant committed an act of sexual penetration upon [the victim]; and

*Second*: That the act was committed by the use of force or threat of force; and

*Third*: That the defendant caused bodily harm to [the victim].

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty.

It is a defense to the offense of criminal sexual assault and aggravated criminal sexual assault that [the victim] consented.

The word 'consent' means a freely given agreement to the act of sexual penetration in question. Lack of verbal or physical

resistance or submission by the victim resulting from the use of force or threat of force by the defendant shall not constitute consent."

■ In order to preserve an issue for review, there must be a specific trial objection and inclusion in a written post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Defendant made no objection here and thus has waived the issue for review. Defendant maintains, however, that the issue of consent is an affirmative defense and thus it is plain error not to include it in an instruction covering the elements of the crime.

■ ■ The court has the burden of seeing that the jury is instructed on all elements of the crime charged, the burden of proof, and the presumption of innocence. The failure to do so results in the denial of due process. (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331; *People v. Williams* (1983), 120 Ill. App. 3d 900, 458 N.E.2d 1312.) We hold that an overall review of the entire set of jury instructions reveals that the trial court here met its duty. No plain error occurred.

In the present case, we believe the State's evidence sufficiently established "nonconsent" beyond a reasonable doubt. Consent is the very antithesis of force. Where the State proves defendant used force, it necessarily proves the victim did not consent. Strong support for our holding that nonconsent is properly proved by inference when the State proves the "force or threat of force" element is found in a recent decision of our supreme court.

In *People v. Haywood* (1987), 118 Ill. 2d 263, 268, 515 N.E.2d 45, defendant argued that "force or threat of force" was unconstitutionally vague. The court stated in *dicta* that nonconsent should be proved beyond a reasonable doubt. Significantly, the court found nonconsent to be the equivalent of use of force.

> "In common understanding, if it is said that one was forced to perform an act, it follows that the person's act was nonconsensual; and if one freely consents to the performance of an act upon oneself, clearly that person has not been forced. Thus, although the prosecution is not required to prove nonconsent formally, it is obvious that if the prosecution shows that there was an act of sexual penetration by force, that evidence demonstrates that the act was nonconsensual. To prove the element of force is implicitly to show nonconsent. Too, if force is established it would be redundant to require a separate showing of nonconsent as part of the prosecution's case in chief. Thus, consent is made a defense to be raised by the accused to rebut evidence of force presented by the State." (*People v. Haywood*, 118

Ill. 2d at 274.)

Similarly, our supreme court held in *People v. Springs* (1972), 51 Ill. 2d 418, 424, 283 N.E.2d 225, that it was not plain error to give an instruction on the element of "by force and against her will" while refusing to instruct the jury further defining the term "consent." The court held that the use of "voluntary" and "consent" together was somewhat redundant, but found no error. *Cf. People v. Fryman* (1954), 4 Ill. 2d 224, 122 N.E.2d 573 (error to refuse consent instruction where proper objection made to trial court's refusal, and State bears burden of proving want of consent beyond a reasonable doubt).

In *People v. Burgin* (1979), 74 Ill. App. 3d 58, 392 N.E.2d 251, this court stated that, "[i]n a sense, consent is an issue in every rape case tried in Illinois. The State is obliged to prove beyond a reasonable doubt that the act was 'against her will.' *** This is the equivalent to proof of absence of consent." *Burgin*, 74 Ill. App. 3d at 69-70, 392 N.E.2d at 259. See also *People v. Hayn* (1976), 34 Ill. App. 3d 1029, 341 N.E.2d 182; *People v. Browry* (1972), 8 Ill. App. 3d 599, 290 N.E.2d 650; *People v. Hanserd* (1970), 125 Ill. App. 2d 465, 261 N.E.2d 317.

We believe that no plain error occurred here. The instructions, to which defendant offered no objection, adequately stated the law of consent. Defendant was not required to prove consent, and the jury was allowed to weigh "force" evidence against "consent" evidence to determine whether force or threat of force was present.

We also note that under the former Illinois rape statute, one element was that the act occur against the victim's will. (Ill. Rev. Stat. 1983, ch. 38, par. 11—1 (repealed 1984).) In 1983, the legislature rewrote the statute and eliminated nonconsent as an element of the offense. (See Inman & Lewis, *H.B. 606: New Problems of Policy and Enforcement*, 72 Ill. B.J. 404 (1984).) Significantly, a preliminary draft stated, " 'If the accused raises consent as a defense *** it shall be an affirmative defense ***.' " (72 Ill. B.J. at 406.) The enacted version deleted the word "affirmative":

> "It shall be a *defense* to any offense *** where force or threat of force is an element of the offense that the victim consented."

(Emphasis added.) (Ill. Rev. Stat. 1987, ch. 38, par. 12—17(a).) The legislature clearly did not intend consent to be an affirmative defense, or to include it as an element of the crime.

We disagree with the holding in *People v. Coleman* (1988), 166 Ill. App. 3d 242, 520 N.E.2d 55, *appeal denied* (1988), 121 Ill. 2d 574. In *Coleman*, the court stated that it was plain error to omit an instruction on consent, notwithstanding defendant's failure to object. The *Cole-*

*man* court reasoned that the instruction was vital because the State was obligated to prove nonconsent. Its only relevant support cited was Illinois Pattern Jury Instructions, Criminal, No. 11.34, Committee Notes (2d ed. Supp. 1987).

We do not decide the debate as to whether consent is an "element" of the offense of aggravated criminal sexual assault which requires an instruction to that effect in every case. We do not decide, therefore, whether consent is an "affirmative defense" which shifts the burden of proof as opposed to a mere "defense." We are faced only with the question of whether plain error occurred under the facts presented here.

■ Notwithstanding our finding that no plain error occurred, we hold further that even if it were error to omit the consent instruction, it was harmless error beyond a reasonable doubt. The trial court instructed the jury on the elements of aggravated criminal sexual assault, and on the defense of consent, the presumption of innocence, and the State's burden. Overall, the instructions fully and fairly defined the applicable law. See *People v. Bunting* (1982), 104 Ill. App. 3d 291, 432 N.E.2d 950.

Moreover, any error was harmless beyond a reasonable doubt because the result of the trial would not have differed if the proper instruction had been given. See *People v. Fierer* (1988), 124 Ill. 2d 176, 529 N.E.2d 972; *People v. Bailey* (1986), 141 Ill. App. 3d 1090, 490 N.E.2d 1334.

In the present case, the evidence proved beyond a reasonable doubt that the victim did not consent to sexual intercourse with defendant. The victim testified that defendant, whom she had met, abducted her from behind; dragged her into an alley; threatened to kill her; struck her face; threw her to the ground; and forced intercourse twice and fellatio once. She screamed, causing someone to telephone the police department. As a result, police found the victim in the alley, half-naked and hysterical. She consistently reported to the police and hospital personnel that she had been raped. The physical evidence supported these statements. In addition, other evidence showed that the victim was uninjured, and was fully clothed, when she left the tavern alone, with defendant following her.

In his statement following arrest, defendant stated he never had sexual intercourse with the victim, and he later denied ejaculating. At trial, defendant testified he had sex with her for money. If the jury had believed defendant that the consensual sex occurred, it would have found him not guilty. Thus, even if the trial court had instructed the jury as to consent, the result of the trial would not have differed.

■■ ■ Defendant next contends that he was not proved guilty of aggravated criminal sexual assault beyond a reasonable doubt because there was insufficient evidence of bodily harm to prove more than mere criminal sexual assault. (See Ill. Rev. Stat. 1987, ch. 38, par. 12—14(a).) Bodily harm, although difficult to pinpoint, involves some sort of physical pain or damage to the body, such as lacerations, bruises or abrasions, whether temporary or permanent. (*People v. Haywood*, 118 Ill. 2d at 276, quoting *People v. Mays* (1982), 91 Ill. 2d 251, 437 N.E.2d 633.) Defendant twice punched the victim in the face and threw her to the concrete ground. The victim's face was swollen on the day following the attack. According to the emergency room nurse, her right elbow abrasion was treated at the hospital. The evidence sufficiently established the requisite element of bodily harm.

■■ Defendant also contends that certain statements regarding his recent release from prison were prejudicial and irrelevant. Defendant's failure to object waived the issue on appeal. (See *People v. Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124.) No plain error occurred because the evidence was not closely balanced and any error was not of such a magnitude that it resulted in the denial of a fair trial. (See *People v. Lucas* (1981), 88 Ill. 2d 245, 430 N.E.2d 1091.) Moreover, no error occurred where the references were probative of defendant's actions in committing the crime and were relevant to his intent and identity. See *People v. Smith* (1972), 6 Ill. App. 3d 259, 285 N.E.2d 460.

Defendant finally contends that the trial court abused its discretion in sentencing him to an extended term of 60 years.

Aggravated criminal sexual assault, a Class X felony, is punishable by 6 to 30 years' imprisonment. (Ill. Rev. Stat. 1987, ch. 38, pars. 12—13, 1005—8—1(3).) The term may be extended to 30 to 60 years where defendant has been convicted of another Class X felony within 10 years prior to the present conviction. (Ill. Rev. Stat. 1987, ch. 38, pars. 1005—5—3.2(b)(1), 1005—8—2(a)(2).) Defendant argues before this court that his "criminal record is minimal." Defendant was previously convicted of raping a woman in 1982. He pleaded guilty to rape and aggravated kidnapping and was sentenced to six and four years concurrently. Thus, defendant was eligible for an extended-term sentence. The issue, then, is whether the court abused its discretion in imposing such a sentence. *People v. Almo* (1985), 108 Ill. 2d 54, 483 N.E.2d 203.

The primary factor considered by the trial court at the sentencing hearing was that this was defendant's second conviction for the same offense. Defendant was released on March 22, 1985. He raped the victim here just three months later. At the sentencing hearing, the first rape victim testified that defendant approached her in approximately

the same area where the victim in the present case was raped. Similar to the facts in this case, the prior rape victim testified that defendant grabbed her from behind, held her throat, forced her into an alley, and tore her clothes. Defendant struck her on the head with his fists, breaking her nose, cutting her mouth, and causing her to faint. He took her to a garage, removed her clothes, and forced her to have sexual intercourse. When the police arrived, defendant fled. The victim was treated at the hospital for physical injuries and received extensive psychological counseling as a result of the severe trauma.

Defendant complains that the trial court considered the victim's psychological harm when she offered no testimony about this. In contrast, he also states generally that he would not "mak[e] light of the trauma experienced by a victim of sexual assault." We think the psychological harm resulting from the brutal rape graphically depicted here by the victim is obvious. (See *People v. Segara* (1988), 126 Ill. 2d 70, 533 N.E.2d 802.) We have already found that there was sufficient evidence of physical harm.

■■ ■ Moreover, contrary to defendant's argument, there was no double enhancement where "bodily harm" was an element of the offense (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(a)(2)), since the aggravating factor for sentencing purposes required "serious harm" (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(a)(1)). (See *People v. Kim* (1986), 148 Ill. App. 3d 191, 498 N.E.2d 831 (defendant's use of force was beyond that required to establish rape, and thus use of knife could be used as aggravating factor for sentencing purposes).) In addition, the record shows the court did consider the mitigating factors urged by defendant, including that his "criminal record is minimal," that he received his GED in prison, reported regularly to his parole officer, had a job, and was "supported wholeheartedly by his family." Notwithstanding these factors, we find no abuse of discretion in sentencing defendant to an extended term where, three months after his release from prison for a rape conviction, he returned to the same neighborhood and brutally raped a second woman.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

FREEMAN, P.J., and RIZZI, J., concur.