THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEROME NORFLEET, Defendant-Appellant.

First District (4th Division)   No. 1—92—0034

Opinion filed March 3, 1994.

JOHNSON, J., specially concurring.

Rita A. Fry, Public Defender, of Chicago (Cheryl K. Lipton, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Celeste Stewart Stack, Special Assistant State's Attorney, and Renee Goldfarb and William D. Carroll, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HOFFMAN delivered the opinion of the court:

A jury found defendant, Gerome Norfleet, guilty of four counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—14), following an incident involving complainant, D.L. The trial

court sentenced him to four consecutive prison terms of 25 years each. He appeals from his conviction and sentence, contending that (1) he was deprived of a fair trial because the jury was not given an issue instruction for the affirmative defense of consent and because the trial court tendered non-Illinois Pattern Jury Instructions (IPI) verdict forms and a non-IPI concluding instruction which misallocated the burden of proof and confused and misled the jury; (2) prosecutorial closing remarks constituted reversible error; (3) the trial court erred in failing to properly consider the jury's request to read portions of a trial transcript during deliberations; (4) the State failed to prove the requisite bodily injury to D.L. to properly elevate this to an aggravated offense; (5) the verdict forms indicate uncertainty as to whether the jury actually found him guilty of two separate acts of anal penetration; (6) the case of *People v. Segara* (1988), 126 Ill. 2d 70, 533 N.E.2d 802, was not intended to apply to the revised enactment of section 5—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(a)), which mandates consecutive sentences for each act of sexual assault; and (7) his 100-year sentence contravenes the Illinois Constitution and was an abuse of discretion.

The indictment charged defendant with, *inter alia*, four counts of aggravated sexual assault under section 12—14 of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 12—14), based upon the following individual acts against D.L.: (1) vaginal penetration with the use of a deadly weapon; (2) oral penetration with the use of a deadly weapon; (3) anal penetration using a deadly weapon; and (4) anal penetration resulting in bodily harm.

At trial, D.L. testified as follows. About 10:30 on the night of May 19, 1990, she was walking home from a restaurant when she encountered defendant, who initially walked past her but then suddenly turned and held a gun to her back. Defendant threatened to kill D.L. if she screamed and then told her to turn around and keep walking. He lead her down several alleys and eventually pushed her through a gangway and into an unlit basement. After ordering D.L. to remove her clothes, defendant forced her to perform fellatio on him while he held the gun to her chest. He then engaged in anal intercourse with her while she bent over the edge of a table, after which he forced her to perform another act of fellatio. Defendant then ordered D.L. to turn around and he again anally assaulted her, after which he forced her to lie down on the basement floor and perform a third act of fellatio. After then engaging in vaginal intercourse with her, defendant stood up, warning her not to scream or he would kill her. D.L. was crying and very upset. Defendant subsequently retrieved D.L.'s clothing, emptied the contents of her pockets and walked outside, taking her identification.

D.L. testified that she then exited the building and went to the home of a friend who lived in the area. After a while, the friend and his girl friend helped D.L. walk to a police car parked nearby. D.L. informed the police about the occurrence and was subsequently taken to the hospital. D.L. testified that she sustained torn anal tissue and bleeding as a result of the occurrence.

D.L. later accompanied the police to the area where the incident occurred and was present when they located defendant's wallet on the basement floor. In July 1990, D.L. identified defendant as her assailant in a lineup.

Police officer Carl Silvestrini testified that at approximately 11:20 or 11:30 that night, he was parked in his police vehicle when D.L. approached with two other individuals who were holding her as she walked. D.L. was crying and her clothing was disheveled. Officer Raymond Dexter testified that he responded to a call subsequently made by Silvestrini, and upon arriving at the scene, saw D.L. lying down in the back of the police vehicle. Dexter testified that D.L. was crying continuously and appeared to be in a lot of pain, and as he subsequently took her to the hospital, she was bending forward and unable to walk properly.

Investigating officer Steven Stratton was at the hospital after the occurrence and testified that D.L. was crying, seemed to be in pain, and had a hard time sitting straight. He further indicated that later that night, D.L. directed police to the building where the incident occurred. On the basement floor, they recovered a man's brown wallet containing a picture identification, which D.L. told them depicted the man who attacked her.

Doctor Radhika Kakarala examined D.L. on the night of the occurrence and found that she had external hemorrhoids and rectal tenderness. This diagnosis was confirmed by a gynecologist. Kakarala testified that D.L. related that she had been sexually assaulted at gunpoint orally, vaginally, and rectally, and that she had experienced some rectal bleeding. Kakarala indicated, however, that her own examination revealed no bleeding or damage apart from the hemorrhoids. On cross-examination Kakarala stated that, although she was unaware of any relationship between anal intercourse and hemorrhoids, such intercourse could cause preexisting hemorrhoids to become tender or bleed. Kakarala did not observe any scratches, scars, or bruises anywhere else on D.L.'s body.

Defendant testified that on the night of the occurrence, he left a friend's house at approximately 10 p.m. and proceeded to a certain area to find a "date." He encountered D.L., and the two conversed about engaging in sex for money. Defendant testified that he had

previously consumed a couple of beers and also believed that D.L. had been drinking and appeared "high." Defendant denied having a gun at any point during the night.

Defendant testified that he and D.L. agreed on a price of $20 for oral, anal, and vaginal sex. Unable to afford a hotel, they searched for a private place to have their "date" and decided on the basement of an abandoned building. Defendant denied that he ever threatened D.L. or forced her into going anywhere.

Defendant testified that after he gave D.L. the $20, she disrobed and they engaged in oral, vaginal and anal sex. At some point defendant, who did not remove his pants, noticed D.L. going through his pocket for his wallet and inquired what she was doing. He subsequently noticed that some money he kept in his pocket outside of his wallet was missing, and confronted D.L. about it. Defendant testified that he succeeded in recovering this money from D.L., along with the $20 he had given her. Later that night when he was at home, he noticed that his wallet was missing. Defendant denied ever forcing D.L. to have sex with him and stated that she was always free to leave. Defendant indicated that he had never seen D.L. before, and that it was she who suggested that they engage in intercourse for the $20 price.

In rebuttal, a fifth officer, Dorothy Price, testified that she was working with Dexter that night, and she stood next to D.L. on the street for about 10 minutes before she was taken to the hospital. Price did not believe D.L. to have been under the influence of alcohol.

Following closing arguments, the jury found defendant guilty of all four counts of aggravated sexual assault. The court sentenced him to four terms of 25 years' imprisonment, to be served consecutively under section 5—8—4(a) of the Unified Code of Corrections. The instant appeal followed.

Defendant's initial arguments on appeal concern the jury instructions in this case. He first maintains that he was effectively denied his constitutional right to present his theory of defense to the jury (see *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313), because the court failed to give Illinois Pattern Jury Instruction number 11.41, which states that consent is a defense to a sexual assault charge. Illinois Pattern Jury Instructions, Criminal, No. 11.41 (2d ed. Supp. 1989) (hereinafter IPI Criminal 2d).

■ All parties are entitled to have the jury instructed regarding their theory of the case where the evidence warrants such instruction. (*People v. Lyda* (1989), 190 Ill. App. 3d 540, 544, 546 N.E.2d 29.) The record here indicates, however, that defendant did not tender this instruction at trial and that he failed to specifically object to its omis-

sion both at trial and in his post-trial motion; therefore, he has waived the issue for review. (*People v. Shields* (1991), 143 Ill. 2d 435, 446, 575 N.E.2d 538; *People v. Huckstead* (1982), 91 Ill. 2d 536, 440 N.E.2d 1248.) Unless a party makes his desired jury instructions clearly known to the trial court, he may not assert the court's failure to give them as a basis for reversal. 134 Ill. 2d R. 366(b)(2)(i); *Huckstead*, 91 Ill. 2d at 543.

We note that, in a motion to supplement the record with allegedly missing portions of the instructions conference, defense counsel argued that she had orally tendered the consent instruction and that the trial court had refused to give it, but that the court reporter had failed to record the colloquy. Following a hearing on the motion to supplement, the trial court rejected this argument and found that the instruction had never been tendered. We similarly conclude that, apart from defense counsel's own assertions, there is no support for this position in the record. Accordingly, we will not disturb the trial court's finding.

Defendant urges that we address this issue as plain error because the evidence in this case was closely balanced. The plain error doctrine applies only where necessary to correct "serious injustices" (*People v. Young* (1989), 128 Ill. 2d 1, 46, 538 N.E.2d 453) or, more specifically, "[where] the question of guilt is close and the evidence in question might have significantly affected the outcome of the case" or where the error is so substantial that it impacts on the fairness and impartiality of the trial. (*People v. Sanders* (1983), 99 Ill. 2d 262, 273, 457 N.E.2d 1241; *People v. Roberts* (1979), 75 Ill. 2d 1, 14, 387 N.E.2d 331.) This is not such a case.

In addition to being appropriately instructed on the presumption of innocence and the State's burden of proof, the jury in this case received the following instructions:

> "To sustain the charge of aggravated criminal sexual assault, the State must prove the following propositions:
>
> *First*: The defendant committed an act of sexual penetration upon [the victim]; and
>
> *Second*: That the act was committed *by the use of force or threat of force, and [the victim] did not consent* to the act of sexual penetration;
>
> *Third*: That the defendant displayed a dangerous weapon; or
>
> *Fourth*: That the defendant caused bodily harm to [the victim].
>
> &ast; &ast; &ast;
>
> The word 'consent' means a freely given agreement to the act of sexual penetration in question." (Emphasis added.)

As the above italicized portions make clear, the jury was apprised

not only of the State's burden to prove that the assault was nonconsensual, but also to show that it occurred by force, which necessarily implies a lack of consent on the victim's part. (See *People v. Roberts* (1989), 182 Ill. App. 3d 313, 537 N.E.2d 1080.) The above instructions sufficiently covered the correct law on the consent issue (see *People v. Springs* (1972), 51 Ill. 2d 418, 283 N.E.2d 225; *People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 697), and in conjunction with defense counsel's arguments at trial, properly enabled the jury to consider defendant's theory of the case.

We similarly reject defendant's next contention that the failure to tender the consent instruction amounted to ineffective assistance of counsel. To warrant reversal for ineffective representation, defendant must prove not only that his counsel's performance fell below an objective standard of reasonableness, but also that a reasonable probability exists that but for counsel's errors, the outcome of the trial would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Caballero* (1989), 126 Ill. 2d 248, 533 N.E.2d 1089.) This determination must be made in light of the totality of the evidence presented to the jury. *Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69.

Assuming *arguendo* that defense counsel acted without a reasonable degree of competence by failing to tender the instruction, this omission did not precipitate the guilty verdict; as stated previously, the instructions given fairly communicated to the jury the law of consent, and defense counsel vigorously presented the theory throughout trial. Thus, defendant fails to meet the *Strickland* standard.

Defendant also argues that the court erred in giving "not guilty" verdict forms which deviated from the standard IPI forms. The IPI form provides "[w]e, the jury, find the defendant ___ not guilty [of ____]." (IPI Criminal 2d No. 26.02 (Supp. 1989).) The forms given in this case were similar to this form, but were expanded to specify the conduct alleged for each particular aggravated sexual assault charge as stated in the indictment. For example, one such form provided as follows:

> "We, the jury, find the defendant *** not guilty of aggravated criminal sexual assault *and, in that he did not commit an act of sexual penetration on [D.L.]* with the use of force, to wit, contact between his penis and [D.L.]'s mouth, while armed with a dangerous weapon." (Emphasis added.)

The court gave a similar expanded form for each of the four counts of the indictment and a corresponding, similarly worded "guilty" form. Defendant contends that this was error because the

IPI forms sufficiently presented the law and because the phrasing of the expanded version, as manifested in the italicized portion above, operated to shift to him the burden of disproving his conduct.

Supreme Court Rule 451(a) provides that when IPI contains an applicable instruction, giving due consideration to the facts and governing law of a case, the IPI instruction shall be used unless the court finds it does not accurately state the law. (134 Ill. 2d R. 451(a); *People v. Glass* (1984), 128 Ill. App. 3d 869, 471 N.E.2d 597.) The determination of when to give non-IPI instructions rests within the sound discretion of the trial court. *People v. Hominick* (1988), 177 Ill. App. 3d 18, 37, 531 N.E.2d 1049.

■ The trial judge's comments during the instruction conference indicate that he considered expanded forms necessary to accommodate the recent change in sentencing laws applicable to sexual assault cases; specifically, the requirement under Unified Code of Corrections section 5—8—4(a) that the court impose a consecutive sentence for each separate act of penetration within one incident of assault. (See Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(a); *People v. Lafferty* (1990), 207 Ill. App. 3d 136, 565 N.E.2d 279.) The court concluded that the explanatory phrases were necessary, in light of the various acts of penetration charged, to help verify that the jury in fact found the defendant guilty or not guilty as to each particular act. We find no abuse of discretion on this point. Nor do we interpret the forms as either explicitly or implicitly misallocating the burden of proof. (See *People v. Duffie* (1990), 193 Ill. App. 3d 737, 550 N.E.2d 691.) In any event, the jury was sufficiently informed as to the State's burden of proof in this case, including the necessity of showing that the intercourse was nonconsensual.

Defendant also asserts that the court gave a confusing, non-IPI concluding instruction rather than IPI Criminal 2d No. 26.01Q (Supp. 1989), which he maintains was the appropriate concluding instruction in this case. (IPI Criminal 2d No. 26.01Q (Supp. 1989).) IPI Criminal 2d No. 26.01Q (Supp. 1989) instructs the jury, among other things, how to properly complete verdict forms where there is a lesser-included offense to the one charged. Such an instruction was appropriate in the case at bar because of the lesser-included offense of simple sexual assault.

Again, we note that defendant never tendered IPI Criminal 2d No. 26.01Q (Supp. 1989) to the court and that he failed to raise this specific objection at trial and in his post-trial motion. Accordingly, he has waived this issue for review. Despite the waiver, however, the argument lacks merit. The instruction given by the trial court was very similar to IPI Criminal 2d No. 26.01Q (Supp. 1989), but varied

essentially because the court rearranged paragraphs within the instruction. Specifically, IPI Criminal 2d No. 26.01Q (Supp. 1989) contains a paragraph explaining that the defendant may be acquitted or convicted, respectively, of either the greater or the lesser offense. This is followed by paragraphs stating that the jury would be required to choose the proper verdict form from among forms which would be provided for each of these potential methods of disposition. In the case at bar, the trial court gave each of these paragraphs, but inserted between them a paragraph which appeared later in the instruction desired by defendant, and provided essentially as follows:

"As to each count, if you find that the State has proved the Defendant guilty of both aggravated criminal sexual assault and criminal sexual assault, then as to that count, you should select the verdict form finding the Defendant guilty of aggravated criminal sexual assault and sign it as I have stated. Under these circumstances, do not sign the verdict form finding the Defendant guilty of criminal sexual assault."

■ Defendant argues that the insertion of this paragraph out of sequence was highly prejudicial because it instructed the jury to choose the aggravated criminal sexual assault verdict form before explaining about choosing between the aggravated or criminal sexual assault forms. We find this argument unpersuasive. The instruction given fully and fairly communicated the same material contained in the IPI instruction, and defendant provides no basis for concluding that the placement of paragraphs confused the jury. Thus, defendant was not prejudiced by the instruction.

Defendant next argues that several comments by the State in rebuttal argument amounted to reversible error. Although defendant properly objected to some of these comments at trial, he failed to object to others and failed to specifically contest any of the alleged improper comments in his post-trial motion. In order to preserve an issue for review, a defendant must make both a contemporaneous objection and a specific objection in his post-trial motion; failure to identify the alleged improper comments with particularity in a post-trial motion results in waiver of the issue. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124; *People v. Fields* (1990), 135 Ill. 2d 18, 552 N.E.2d 791.) We thus address defendant's arguments to determine whether plain error occurred. See *Sanders*, 99 Ill. 2d 262, 457 N.E.2d 1241.

Defendant argues that the following comments by the prosecutor during rebuttal closing argument were improper because they were not based on the evidence and they improperly vouched for D.L.'s credibility:

"If you are going to accept *what the defense tells you, then you are going to have to accept this proposition that [D.L] is a prostitute* *** a streetwalker, a hooker. You have to accept that proposition if you believe what they tell you and ask yourself, think long and hard, was [*sic*] [D.L.'s] actions consistent with those of a prostitute? *** Even after this incident occurred or even yesterday when she testified before all of you, do you think a prostitute would go running to Chicago Police Officers *** immediately outcry to them as to what had happened? *** Do you think a prostitute is going to pursue somebody, show up at a police station two months later and pick him out of a lineup? Do you think a prostitute is going to come into this court of law before all of you jurors, take that stand and testify?

\* \* \*

Don't you think the detectives up at Area 6 violent crimes might have caught onto that sort of bag? Don't you think that Sergeant Silvistrini and the sergeant in the area where this crime took place would have known who [D.L.] was if she was a prostitute *** [d]on't you think State's Attorneys [*sic*] Office would have figured it out?" (Emphasis added.)

Closing arguments must be based upon the evidence or inferences reasonably permissible from it. (*People v. Henderson* (1990), 142 Ill. 2d 258, 324-25, 568 N.E.2d 1234.) At the same time, a prosecutor is permitted great latitude in closing argument, and improper remarks do not require reversal unless the results of the trial would have been different had the remarks not been made. (*People v. Thompkins* (1988), 121 Ill. 2d 401, 445, 521 N.E.2d 38; *People v. Cisewski* (1987), 118 Ill. 2d 163, 514 N.E.2d 970.) Improper comment has been deemed plain error when it was either so inflammatory that it deprived defendant of a fair trial or so flagrant that it threatened a deterioration of the judicial process. *People v. Phillips* (1989), 127 Ill. 2d 499, 524, 538 N.E.2d 500.

■ Defendant maintains that the italicized statement above implied that in order for the jury to accept the defense theory, they were required to accept the proposition that D.L. was an habitual prostitute, a fact which was not supported by the evidence. Defendant's contention is somewhat incongruous in light of his position throughout trial, specifically, that D.L. had intercourse with him for money; that he encountered her in an area where he had gone to look for a "date"; and that D.L. was a "prostitute" and defendant was her "john." Defendant did not restrict his characterization of D.L. to that of a one-time prostitute. At the very least, the prosecutor's comment was a valid inference from defendant's own arguments and, hence, was not error.

The second paragraph of the above comments, however, while attempting to expose the alleged practical implausibility of the defense's story, also tended to suggest that had the story been true, the State's Attorney would have known it and would not have brought this case. Generally, a prosecutor may not personally vouch for a witness' credibility or for the merit of the State's case (*People v. Emerson* (1987), 122 Ill. 2d 411, 434, 522 N.E.2d 1109), nor may she use the integrity of her office to attack the credibility of a defense witness. (See *People v. Wilson* (1990), 199 Ill. App. 3d 792, 795, 557 N.E.2d 571.) Although the allusion to the knowledge of the State's Attorney's office was improper (*cf. Emerson*, 122 Ill. 2d at 433-36), we do not deem it egregious enough, standing alone, to require a new trial. Compare comments in *Wilson*, 199 Ill. App. 3d 792, 557 N.E.2d 571.

Defendant also alleges plain error in the following comments during the State's rebuttal closing argument:

"[T]he defense told you that there were only two eyewitnesses to this crime, *** [D.L. and defendant], *** so folks, the bottom line comes down to this, credibility, who are you going to believe. Are you going to believe the victim ***, mother of three, who got up on that witness stand in front of a room full of strangers to talk about the despicable things that she suffered at the hands of the Defendant, or are you going to believe the Defendant, are you going to believe five Chicago Police Officers, all of which [*sic*] corroborated, supported what [D.L.] told you, or, are you going to believe the Defendant?"

Defendant maintains that these comments effectively told the jury that in order to find defendant not guilty, it must find that D.L. and five police officers were lying. Prosecutorial statements which tell the jury what it must believe in order to reach a certain verdict have been deemed plain error where they misstate the law or distort the burden of proof. (See *Wilson*, 199 Ill. App. 3d 792, 557 N.E.2d 571.) However, the supreme court has held that such comments are not prejudicial if the parties do in fact testify to considerably differing versions of the occurrence. (*People v. Pecoraro* (1991), 144 Ill. 2d 1, 578 N.E.2d 942.) Moreover, it is proper closing argument for the State to question before the jury the credibility of the accused and the logic of his case. *People v. Bryant* (1983), 94 Ill. 2d 514, 447 N.E.2d 301; *Phillips*, 127 Ill. 2d 499, 538 N.E.2d 500.

The above comments in the case at bar were in response to the defense's closing argument, in which counsel pointed out that there were only two witnesses to the assault. Unlike the remarks deemed inappropriate in prior cases, those here did not affirmatively shift the burden of proof or instruct the jury that it must disbelieve State

witnesses in order to acquit defendant. (See, *e.g.*, *Wilson*, 199 Ill. App. 3d 792, 557 N.E.2d 571.) Taken in context, these statements merely suggested that the jury compare the credibility of the opposing witnesses and stories. Thus, the comments were proper.

■ Defendant also argues that the trial court committed reversible error by failing to grant the jury's request during deliberations to view certain portions of the trial transcript. Specifically, defendant argues that the court should have further clarified the jury's request before summarily denying it, and that the court's comments indicated that it was unaware that it had discretion to order that transcripts be made. Our review of the record indicates, however, that not only did defendant fail to preserve this issue for appeal (*Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124), but he also precipitated this alleged error by twice recommending to the court that the jury's request for transcripts be denied and that they be instructed to continue deliberating. A defendant who acquiesces in or induces an alleged error cannot raise it as an issue on appeal. (*Posner v. Wechter* (1934), 276 Ill. App. 138, 141; *Martin v. McIntosh* (1976), 37 Ill. App. 3d 526, 346 N.E.2d 450.) In any event, our review of the judge's comments in denying the request fails to demonstrate that he was unaware of his discretion to order transcripts.

Defendant raises two challenges to his convictions premised upon anal penetration. First, he contends that the conviction which was aggravated based upon the infliction of bodily harm must be reduced to simple sexual assault, because there was insufficient evidence to prove that he "caused [D.L.] bodily harm by causing a tear in her anus."

When confronted with a challenge to the sufficiency of the evidence, this court will not disturb a conviction unless it determines, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Young*, 128 Ill. 2d 1, 538 N.E.2d 453.) In *People v. Mays* (1982), 91 Ill. 2d 251, 437 N.E.2d 633, the supreme court adopted for sexual assault cases the definition of "bodily harm" under battery and declared that it necessitated a showing of "some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent." (*Mays*, 91 Ill. 2d at 256.) Proof of bodily harm under battery does not require direct evidence of injury, such as bruising or bleeding (*People v. Foster* (1982), 103 Ill. App. 3d 372, 377, 431 N.E.2d 430; *People v. Choate* (1979), 71 Ill. App. 3d 267, 276, 389 N.E.2d 670), but may be inferred by the trier of fact based upon circumstantial evidence in light of common experience. *People v. Jenkins* (1989), 190 Ill. App. 3d 115, 138, 545 N.E.2d 986.

■ In support of his contention of insufficient evidence of bodily harm, defendant refers us to Dr. Kakarala's testimony that, although D.L. exhibited hemorrhoids and anal tenderness, Kakarala observed no anal tearing or bleeding. However, D.L. testified that prior to seeing Kakarala she had suffered anal bleeding and much pain as a result of being sexually assaulted by defendant. This was corroborated by Silvestrini, Dexter, and Stratton, who established that D.L. needed assistance in walking and had difficulty sitting straight, appeared to be in great pain, and cried continuously. It is not this court's province to substitute our assessment of the witnesses' credibility for that of the trier of fact. (*Young*, 128 Ill. 2d at 51.) We conclude that this evidence, viewed in the light most favorable to the State, certainly permitted the conclusion that D.L. sustained the physical pain, lacerations, bruises or abrasions necessary for a showing of bodily harm.

Defendant next urges that one of his two convictions based upon anal penetration be vacated because it is unclear that the jury actually found that he committed two separate acts of anal penetration. As his primary support for this proposition, defendant apparently relies upon the following inquiry made by the jury during deliberations:

> "There are 2 [*sic*] verdict forms stipulating guilty of aggravated criminal sexual assault for anal penetration; one for each stipulation (bodily harm & dangerous weapon). Is it proper to sign both forms if we indeed agree to both stipulations or are only [*sic*] to sign one or the other?"

The court responded that if the jury agreed to both, it should sign both verdict forms, which it proceeded to do. The language of the jury's inquiry and the fact that it properly signed both verdict forms clearly demonstrates that it believed defendant committed two acts of anal penetration. Thus, defendant's contention is without merit.

Defendant next contends that the supreme court's decision in *People v. Segara* (1988), 126 Ill. 2d 70, 533 N.E.2d 802, that each act of penetration during one incident of sexual assault is punishable as a separate offense, was not intended to apply to the present enactment of section 5—8—4(a) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(a)), which was revised to require a consecutive sentence for each sexual assault offense.

In *Segara*, as in the instant case, the defendant was charged under Code section 12—14 (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)) with multiple counts of aggravated criminal sexual assault following one incident involving one victim. The supreme court observed that each act of penetration was " 'readily divisible and intensely

personal[,] [and constituted] an offense against a *person.*' " (Emphasis in original.) (*Segara*, 126 Ill. 2d at 77, quoting *Pruitt v. State* (1978), 269 Ind. 559, 565, 382 N.E.2d 150, 154.) Thus, even though the acts occurred in the course of a single "transaction," they were separate offenses. (See also *People v. Turner* (1989), 128 Ill. 2d 540, 539 N.E.2d 1196.) However, the court also stated that the defendant could receive only concurrent sentences for offenses arising from the same sexual assault. *Segara*, 126 Ill. 2d at 78.

Defendant maintains that because *Segara* was decided under the prior sentencing law, which made the decision of whether to impose consecutive or concurrent sentences for sexual assault discretionary with the trial court (see Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4), *Segara* was not intended to apply to cases where consecutive sentences were required. A review of case law since the revision of section 5—8—4 in July of 1988, however, indicates that this argument is without merit.

Section 5—8—4(a) provides:

> "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, *** the defendant was convicted of a violation of Section 12—13 or 12—14 of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively." Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(a).

In *People v. Wittenmyer* (1992), 151 Ill. 2d 175, 601 N.E.2d 735, the court reaffirmed the general rule precluding consecutive sentences for offenses which were part of a single course of conduct; however, the court determined that the plain language and legislative history of section 5—8—4(a) manifested the legislature's intent to create an exception to this rule for convictions under Code section 12—14. Where there is such a conviction, the court is required to impose a consecutive sentence. *Wittenmyer*, 151 Ill. 2d at 195-96; see also *People v. Bole* (1993), 155 Ill. 2d 188, 613 N.E.2d 740.

■ Although neither *Wittenmyer* nor *Bole* involved the precise issue in the instant case, this court has previously held that section 5—8—4(a) mandates consecutive sentences for each act of penetration occurring within the same incident of assault. (See, *e.g., People v. McDade* (1991), 219 Ill. App. 3d 317, 579 N.E.2d 1173; *People v. Lipscomb* (1991), 215 Ill. App. 3d 413, 574 N.E.2d 1345.) We find this interpretation to be consistent with the plain language of section 5—8—4(a) and find no basis to depart from precedent. See *Lipscomb*, 215 Ill. App. 3d at 439-40.

Defendant also asserts that the application of *Segara* to section

5—8—4(a) violates the Federal and Illinois Constitutions. However, he fails to indicate why this is so and fails to cite cases in support of his argument. Thus, the issue is waived. (*People v. Dinger* (1990), 136 Ill. 2d 248, 554 N.E.2d 1376.) To the extent he maintains it violates double jeopardy, this argument has already been rejected. See *McDade*, 219 Ill. App. 3d 317, 579 N.E.2d 1173.

Defendant lastly argues that his 100-year prison sentence was a violation of the Illinois Constitution and an abuse of discretion, because it was imposed without regard for his rehabilitative potential and was wholly disproportionate to the seriousness of the offense as it occurred in this case. The State maintains that the sentence was appropriate because this offense involved exceptionally brutal and heinous circumstances.

Generally, it is not this court's function to substitute its judgment for that of the trial court as to sentencing matters, and a sentence will not be disturbed on review absent an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) In sentencing a defendant, the court generally may not consider as a factor in aggravation any factor which is implicit in the offense itself. (*People v. Ferguson* (1989), 132 Ill. 2d 86, 97, 547 N.E.2d 429; *People v. Edwards* (1992), 224 Ill. App. 3d 1017, 1033, 586 N.E.2d 1326.) The court may consider, however, the gravity and circumstances of the offense, as well as defendant's mental capacity, age, social environment, and credibility in determining the proper sentence. (See *Perruquet*, 68 Ill. 2d at 154.) Additionally, article I, section 11, of the Illinois Constitution requires that the court balance the seriousness of the offense with the "objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, § 11.) Rehabilitation must be an actual objective of the sentence (*People v. Harris* (1989), 187 Ill. App. 3d 832, 844, 543 N.E.2d 859), and the trial court must clearly indicate its consideration of rehabilitation as a factor. *People v. Haepp* (1990), 194 Ill. App. 3d 207, 210, 550 N.E.2d 1194; *People v. Gibbs* (1977), 49 Ill. App. 3d 644, 364 N.E.2d 491.

Aggravated sexual assault is a Class X felony with a sentence range of between 6 and 30 years' imprisonment for each offense. (Ill. Rev. Stat. 1989, ch. 38, pars. 12—14(d), 1005—8—1.) As indicated previously, the court was required to impose consecutive terms for each of the four acts of penetration for which defendant was convicted. (*Lafferty*, 207 Ill. App. 3d 136, 565 N.E.2d 279; *Lipscomb*, 215 Ill. App. 3d 413, 574 N.E.2d 1345.) In imposing individual terms at the high end of the sentence range, the court in this case indicated that defendant's acts were exceptionally brutal and heinous because he threatened to kill D.L. and twice forced her to perform oral sex af-

ter anally assaulting her. The court also found that D.L. had sustained serious injury, that defendant lacked remorse, and that defendant's trial testimony was "incredible and outrageous." Factors in mitigation included that defendant, in his mid-thirties, had no prior felony record; that the testimony shows that the offense was completed in about one-half of an hour; that apart from hemorrhoids, D.L. suffered no bruises, scrapes, or other arguably lasting physical injuries; that defendant had obtained his high school equivalency certificate (GED) and attended two years of college; and that he was employed at the time of his arrest and had been employed previously.

Despite the above mitigating factors, defendant received a sentence which will result in his being incarcerated for the rest of his life with no possibility of restoration to useful citizenship. Although the trial judge perceived defendant as incredible and lacking remorse, both proper factors in aggravation (see *Perruquet*, 68 Ill. 2d 149, 368 N.E.2d 882), he did not indicate that defendant was so utterly beyond rehabilitation as to require individual terms the aggregate of which will amount to a life sentence. If the mandate of article 1, section 11, is to be given any effect, the court should, in exercising its sentencing discretion under the mandatory consecutive sentencing provisions, give consideration to the cumulative effect of the terms imposed for each act of penetration, in light of the particular circumstances of each case.

■ We emphasize that we do not seek to minimize in any way the abhorrence of defendant's conduct. However, defendant was a first-time felony offender. His use of a gun and infliction of bodily injury upon D.L. were the bases upon which his offenses were elevated to Class X felonies (see Ill. Rev. Stat. 1989, ch. 38, par. 12—14(d)) and, as such, were already factored into his sentence by the legislature through the applicability of a higher sentencing range, and may not be considered as aggravating factors in imposing sentence. See *People v. White* (1986), 114 Ill. 2d 61, 66, 499 N.E.2d 467.

Furthermore, the terms in this case greatly exceeded those in other aggravated sexual assault cases both prior to and since the revised sentencing law (see, *e.g.*, *Lafferty*, 207 Ill. App. 3d 136, 565 N.E.2d 279; *Lipscomb*, 215 Ill. App. 3d 413, 574 N.E.2d 1345; see also *People v. Boland* (1990), 205 Ill. App. 3d 1009, 563 N.E.2d 963; *People v. Riley* (1991), 219 Ill. App. 3d 482, 579 N.E.2d 1005; *People v. Halstead* (1987), 164 Ill. App. 3d 1, 517 N.E.2d 667 (defendant sentenced to 45 years for orally and vaginally assaulting 13-year-old victim, terrorizing her and her family for entire day and shooting father in arm); *People v. Calva* (1993), 256 Ill. App. 3d 865 (40 years' imprisonment found excessive for defendant with no prior criminal record,

who sexually assaulted six-year old-victim orally, anally and vaginally, giving her chlamydia)). The only comparable sentence uncovered by this court occurred in a case involving far more egregious circumstances (see *People v. Wrice* (1986), 140 Ill. App. 3d 494, 488 N.E.2d 1313 (defendant sentenced to 100 years for apprehending victim, taking her to his apartment, and participating in a gang rape which lasted entire day and included beating and torture, resulting in burns of over 20% of her body and 80% of her back)). Indeed, defendant's aggregate sentence also exceeds sentences held excessive for first-degree murder or voluntary manslaughter. (See, *e.g., People v. Gibbs* (1977), 49 Ill. App. 3d 644, 364 N.E.2d 491 (term of 50 to 100 years for murder held excessive); *People v. Steffens* (1985), 131 Ill. App. 3d 141, 475 N.E.2d 606 (term of 30 years for murder reduced); *People v. Horton* (1976), 43 Ill. App. 3d 150, 356 N.E.2d 1044 (25 to 50 years reduced for murder committed by 17-year-old with no prior criminal record); *People v. Hopkins* (1992), 247 Ill. App. 3d 951, 965-66, 618 N.E.2d 279 (60 years for murder reduced to 40 years where defendant also sexually assaulted his victim, beat her and then threw her out of window); *People v. Wilkins* (1976), 36 Ill. App. 3d 761, 344 N.E.2d 724.) Accordingly, we remand this case for resentencing, with consideration to be given to the cumulative amount of the individual terms imposed.

Affirmed in part; vacated in part and remanded.

CAHILL, P.J., concurs.

JUSTICE JOHNSON, specially concurring:

I agree with the majority that defendant's convictions should be affirmed. I write separately, however, to address defendant's sentence, which I consider to be both undeniably excessive and unjustified by any reasonable view which might be taken of the record.

The Illinois Constitution dictates that "[a]ll penalties shall be determined both according to the seriousness of the offense *and with the objective of restoring the offender to useful citizenship."* (Emphasis added.) (Ill. Const. 1970, art. I, § 11.) Both this constitutional mandate and our State's fundamental law require a trial court to consider a defendant's rehabilitative potential when imposing a sentence, and to act on it as an objective of his sentence. (*People v. Treadway* (1985), 138 Ill. App. 3d 899, 904.) Therefore, I submit that trial courts must consider a defendant's rehabilitative potential and make it an objective of the sentence to be imposed even in cases where, as here, consecutive sentences are required.

In the present case, I am persuaded by the cumulative effect of defendant's sentence that the trial court abused its discretion by failing to comply with the constitutional mandate. I acknowledge that a trial court's determination concerning sentencing matters is entitled to great weight. (See *People v. Wesley* (1993), 250 Ill. App. 3d 245, 264.) However, the presumption that a sentence is proper may be overcome by an affirmative showing that the sentence imposed greatly departs from the spirit and purpose of the law or is manifestly contrary to constitutional guidelines. *People v. Boclair* (1992), 225 Ill. App. 3d 331, 335.

After reviewing the record in this case, I am strongly convinced that the cumulative effect of defendant's sentence manifests the trial court's obvious indifference to his rehabilitative potential. As the majority notes, defendant was 34 years old at the time of the offense, was employed, and had no prior convictions. Given this evidence, I believe that the trial court's impermissible apathy toward defendant's rehabilitative potential was made manifest by the imposition of a virtual life sentence. Consequently, the trial court's imposition of a 100-year prison term ran afoul of the constitutional directive that rehabilitation be an actual objective of the sentence.

In *People v. Harris* (1989), 187 Ill. App. 3d 832, this court vacated the defendant's 25-year sentence in an aggravated criminal sexual assault case, reasoning that a reduced sentence would "allow defendant at least the possibility of being restored to a meaningful, productive life, and at the same time will be adequate retribution for his offenses, provide protection for society, and serve as a deterrent." (*Harris*, 187 Ill. App. 3d at 847.) Just as a trial court must consider the seriousness of the crime when imposing a sentence, the defendant's rehabilitative potential is a significant factor and it must also be given adequate consideration. (See *People v. Donald* (1991), 222 Ill. App. 3d 794.) Therefore, without any reservation, I agree with the majority that the cause be remanded for resentencing.