THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID LEE LOTT et al., Defendants-Appellants.

Fifth District   No. 76-84

Opinion filed January 31, 1978.

Michael J. Rosborough, of State Appellate Defender's Office, of Mt. Vernon, for appellants.

Clyde L. Kuehn, State's Attorney, of Belleville (Bruce D. Irish and John A. Clark, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Defendants, David Lee Lott and Willie Cotton, were jointly tried and convicted of the murders of two men at a jury trial in the Circuit Court of St. Clair County. The jury trial was concluded on November 14, 1974. After a hearing in aggravation and mitigation, the trial judge on November 26, 1975, sentenced Lott to two consecutive terms of imprisonment of 150 to 300 years, and Cotton to two consecutive terms of imprisonment of 100 to 150 years.[1]

---

[1] By way of explanation of the hiatus between the date of the jury verdict and the date of the sentencing, it is noted that the State sought to have the death penalty imposed upon the defendants, such effort culminating in a decison by the supreme court that the death penalty legislation was unconstitutional. *People ex rel. Rice v. Cunningham,* 61 Ill. 2d 353, 336 N.E.2d 1.

In this joint appeal, the defendants contend: (1) that Cotton was denied his sixth amendment right to confront the witnesses against him because the jury could infer from testimony of Lott's oral confession that Lott had implicated Cotton; (2) that evidence they had committed two armed robberies the preceding night was improperly admitted; and (3) that consecutive sentences were improper.

At the trial, Marcel Holton, the proprietor of Lulu's Package Liquor Store, testified that both decedents, Walter McDowell and Rosco Gilmer, and the defendants were in his establishment until approximately 10 p.m. on July 28, 1974. The defendants left shortly before the decedents. Three persons sitting on a porch near the store saw the decedents enter their car and saw them stop to allow two men to enter the backseat on the passenger's side. According to these witnesses, one of the passengers was short and stocky, and the other was tall, thin and wearing a wide-brimmed light colored hat. Shortly after the car pulled away from the store, these three witnesses heard a single shot followed by two more shots.

Ezell Holton, an employee of the liquor store, testified that Lott returned to the store around 12:30 p.m. of the same evening. He was sitting on the end of the candy counter and his coat was pulled up. Holton saw a gun in his right hip pocket and he pulled it out of his pocket. He stated that it was a .38 revolver, short barrel with a brown handle, and he observed "one shell getting ready to go in the chamber and there was another one already in the chamber."

Police Chief Thomas Windom of Alorton testified that a call was received at approximately 11:15 p.m. on July 28, 1974, concerning the fact that there were bodies lying in the street at 3700 Converse Avenue which is a short distance from Lulu's Package Liquors. Dr. Robert Sueper testified that he performed an autopsy on the bodies of Rosco Gilmer and Walter McDowell, the victims, on July 29, 1974. McDowell had died from two gunshot wounds to the upper part of his body, and Rosco Gilmer had been killed by a gunshot wound to the neck.

Linda Carter testified that she lived with David Lott during the latter part of July 1974. She stated that she was given a gun by David Lott who instructed her to give it to his brother if the "police came around." Linda stated that she took the gun to her sister's (Brenda) home shortly after Lott was arrested. Brenda Carter identified the gun as the one which had been brought to her by her sister. She further testified that sometime after her sister had brought the gun to her house, Linda was picked up by the police. Brenda then called Lott's father who came to her house where she gave him the gun in question. During the investigation the murder weapon was recovered from a subfloor in an outbuilding at Lott's father's home.

Sergeant Joseph Bresser, a firearms identification expert, testified that

the slug recovered by State Police Detective Terrance Delaney on July 29, 1974, near the scene where the bodies were discovered and the slug removed from the body of Rosco Gilmer were "definitely" fired by the gun recovered from the residence of Lott's father. Police Officer Gerald Johnson testified that he searched a home that had been occupied by Irene Gardner and Willie Cotton and recovered a pair of sunglasses. These sunglasses were identified by Maggie McDowell, widow of one of the decedents, as belonging to her husband. Elinor Chapman, daughter of Maggie McDowell, testified that Walter McDowell had the sunglasses in question when she saw him at about 6 p.m. on July 28, 1974.

Several witnesses who were in the area of Lulu's Package Liquors on the night in question testified that they saw the decedents as they got into their car. Then they saw two other men enter the car from the passenger's side. Several witnesses identified the defendants as being the two passengers who entered the rear seat of the decedent's automobile just prior to the car driving away from the liquor store. Three witnesses stated that shortly after the decedents' car left the scene they heard what they thought to be a single shot followed by two more. In addition to this evidence, the State called two men who had been robbed by Lott and Cotton the night before. One victim testified that the defendants forced their way into his car about 4 a.m. the morning of July 28, 1974. This incident took place on the parking lot of a night club near East St. Louis, Illinois. After hitting him in the face with the butt end of a pistol and knocking two teeth out, Cotton drove the automobile to a service station where the victim was forced out of his automobile. As Cotton drove the automobile away, Lott pointed a gun at the victim. The State also called a cabdriver who stated that he was "flagged down" about 2 a.m. by the defendants on a street in East St. Louis and they took his billfold and money changer. Cotton forced him out of the cab and fired a shot at him.

At trial two witnesses testified concerning various statements made by the defendants. A St. Clair County jailer testified that Lott stated that he had shot the passenger because he was old and had shot the driver because the driver begged him not to harm him. At approximately 5 p.m. on July 30, Detective Terrance Delaney interrogated Willie Cotton, after which he gave a written statement. Delaney then read Cotton's statement to Lott, whereupon Lott in an oral confession admitted robbing and murdering both victims. Delaney testified that he had occasion to interview Cotton again, this time at Cotton's request. On this occasion, Cotton made a statement which was at variance with his earlier written statement and admitted being in the car when the first victim was shot and outside the car when the second victim was killed. When the State asked Detective Delaney to describe the substance of Lott's statement, detective Delaney began his description with the following statement:

"He [Lott] said that he was in \* \* \* Lulu's Packaged Liquor Store \* \* \* the evening of the 28th and an armed robbery was planned \* \* \*."

Cotton contends that this statement violated his sixth amendment right to confront the witnesses against him. While this statement does not refer to Cotton by name, other testimony places him in the liquor store in Lott's company; and, the jury could, therefore, infer that Lott was planning a robbery with Cotton. (*Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.) Because Cotton's defense is that he had no knowledge of Lott's plan to rob and murder the victims, Cotton argues that this statement was critical in the trial. In reply, the State argues that no violation of *Bruton* occurred. The jury could have, just as easily, concluded from this statement that Lott was planning the robbery with someone else. The State also argues that even if a technical violation of *Bruton* occurred, the use of this statement was harmless beyond a reasonable doubt in light of the overwhelming evidence of guilt.

■■ We agree with the State that no violation of *Bruton* occurred. In *Bruton*, the Supreme Court held the introduction of an out-of-court statement by one co-defendant which implicates a second co-defendant violates the latter's right to confront the witnesses against him. Unlike *Bruton*, the nontestifying co-defendant was not identified by name. In *Harrington v. California*, 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726, the Supreme Court held that a violation of *Bruton* could occur if the statements clearly referred to the co-defendant. In *Harrington*, the Negro co-defendants described Harrington as "this white guy" in their confessions. The jury could reach no other conclusion but that the co-defendants were referring to Harrington.

■■ Unlike *Harrington*, we do not think that detective Delaney's reference to Lott's statement that a "robbery was planned" clearly implicates Cotton. Furthermore, since this statement occurred at the beginning of a lengthy description of Lott's confession, we doubt that the jury analyzed these three words in the manner propounded by the defense.

In order to show Cotton's knowledge and intent, the State offered testimony of two men who stated that the defendants had robbed them at gunpoint the preceding night. The defendants argue that the probative value of this evidence is far outweighed by its prejudicial impact upon the jury.

■■ Generally, evidence of crimes other than one for which an accused is being tried is not admissible unless the evidence tends to prove a fact in issue or goes toward showing motive, intent, identity, absence of mistake or modus operandi. (*People v. McDonald*, 62 Ill. 2d 448, 343 N.E.2d 489.) It was because of the similarity between the two prior crimes and the crime for which Cotton was on trial that the State was able to show Cotton's intent and to refute the theory that Cotton was merely

present at the scene of the crime. This evidence clearly demonstrates that Cotton had the intent to rob and had knowledge of Lott's plans. While the State admits that Lott was implicated in a discussion of these crimes, the State contends that Lott was not prejudiced because Lott's guilt had been established by other evidence including his confession. We agree with the State that evidence of Lott's guilt was overwhelming, and, therefore, the admission of this evidence against Lott was harmless.

The defendants argue that the trial judge improperly imposed consecutive sentences. Section 5—8—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4) states: "\* \* \* The court shall not impose consecutive sentences for offenses which are committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective. \* \* \*" The defendants argue that they had the intent to rob and murder their victims from the beginning and, therefore, there had been no change in the nature of their criminal objective. The defendants attempt to distinguish the facts of this case from *People v. Williams*, 60 Ill. 2d 1, 322 N.E.2d 819. In *Williams*, the supreme court held that the nature of the criminal objective changed from robbery to murder during the course of the incident, and, therefore, consecutive sentences were proper.

■■ While the appellants' brief failed to argue that Lott's and Cotton's cases should be considered separately, we believe that separate treatment is necessary in order to properly analyze the chain of events. The nature of Lott's criminal objective clearly changed during the course of the incident. By his own admission, he did not form the intent to kill the driver until after he had murdered the passenger. Defendant Lott clearly formed the intent to commit two separate and distinct murders and his consecutive sentences are affirmed.

■■ The evidence against defendant Cotton indicates that Cotton had formed the intent to rob the victims. The evidence indicates that Lott committed both murders, and no evidence indicates that Cotton had knowledge that Lott intended to commit two murders. Cotton was convicted on an accountability theory and his sentences are hereby made to run concurrently.

The judgment of the Circuit Court of St. Clair County as to defendant Lott's conviction and the sentences imposed therein will be affirmed; the judgment as to defendant Cotton's conviction will be affirmed but the sentences to two consecutive terms of imprisonment of 100 to 150 years is hereby modified so that the sentences are to be served concurrently. An amended mittimus will be issued as to Cotton's sentence.

Judgments affirmed as modified.

EBERSPACHER, P. J., and KARNS, J., concur.