THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL TOLIVER, Defendant-Appellant.
Second District No. 2—91—1195

Opinion filed November 10, 1993.

Adam Bourgeois, of Chicago, and G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COLWELL delivered the opinion of the court:

On June 19, 1991, defendant, Michael Toliver, was charged by indictment with one count of home invasion (Ill. Rev. Stat. 1991, ch. 38, par. 12—11(a)(2) (now 720 ILCS 5/12—11(a)(2) (West 1992))) and three counts of aggravated criminal sexual assault premised on bodily harm (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(a)(2) (now 720 ILCS 5/12—14(a)(2) (West 1992))). Following a jury trial, defendant was found guilty on all counts. On October 11, 1991, the trial court sentenced defendant to 30 years' imprisonment on count I (home invasion), a 30-year concurrent term on count II, and 15-year terms on counts III and IV to run concurrently to each other, but to run consecutively to counts I and II.

Defendant timely appeals, contending that the imposition of consecutive sentences pursuant to section 5—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(a) (now 730 ILCS 5/5—8—4(a) (West 1992)) is unconstitutional because the provision violates the requirements of equal protection of the laws and substantive due process.

We disagree. We hold that, under the circumstances presented, section 5—8—4(a) withstands these two constitutional challenges. However, because it is unclear why the trial court did not apply the mandatory, consecutive sentencing provision in a consistent manner (some terms being concurrent, others consecutive), we vacate the sentences and remand the cause for the court to reconsider the sentences and impose new sentences consistent with the views expressed here.

We recite only those facts sufficient to an understanding of the course of conduct involved in the commission of the offenses as that conduct pertains to the sentencing issues presented. The victim, Jody D., testified that she was in the upstairs bedroom of her home, where she was taking a nap sometime after 1:30 p.m. on Saturday, May 25, 1991. She was wearing a pink nightshirt. She was awakened when a tall, black male, later identified as the defendant, pulled the comforter off of her. He was nude and weighed approximately 175 to 180 pounds. As Jody was lying on her back, defendant jumped on top of her. Jody asked who he was and what he was doing and yelled out for her boyfriend, Kenny. Defendant said not to worry, that Kenny was

downstairs and had sent him up to her room. Cursing, Jody said Kenny would not do that to her.

Defendant grabbed both of Jody's hands and held them over her head with one hand while he took his fist and forced it into her vagina. Jody was screaming, and defendant said he would stop if she stopped screaming. After she stopped screaming, defendant removed his fist and then placed his mouth on her vagina for about 15 seconds and bit her. Jody begged him to stop. These events took place on a water bed so that during the assault Jody's head was hitting the wood frame of the bed and it hurt her.

After he stopped putting his mouth on her vagina, defendant, who did not have an erection, tried to place his penis in her vagina for a couple of minutes; there was a slight penetration. Jody kept struggling to work herself off of the bed and tried to persuade him that she needed a drink of water. She was weak and in pain and was able to inch her way along the wall, but defendant was right next to her. Defendant would not let her go downstairs, but said she could get a drink from the upstairs bathroom. She said she would not drink the water from the bathroom as it was "piss water."

As she came out of the bedroom, she saw defendant's pile of clothing just inside the neighboring entrance to the bathroom. She did not recall the shirt, but remembered seeing blue jeans and white tennis shoes with black trim. When defendant reached for his clothes, Jody made her way slowly down the stairs. She was in a lot of pain. Defendant had put on his pants and was following her down the stairs. Jody got to the kitchen, where she hid a knife that was on the counter because she was afraid it would be used on her. When she turned around, defendant was standing in the middle of the living room. Jody went to sit on the couch, and defendant came over and told her to spread her legs. Jody told him to leave her alone, but he forced her legs open, put his mouth on her vagina for about 10 or 15 seconds and bit her again. Defendant then lifted her off the couch, carried her through the dining room where he stopped, put her on the floor, and spread her legs again. While Jody begged him to stop, he put his fist up her vagina again.

After he removed his fist, Jody crawled back to the couch. She heard keys jingling. She got off the couch to see what keys defendant had in his hand, but could not see them. She followed as he went to the front door and unlocked it. She saw that they were her keys. Jody followed defendant as he went out to her car where he put the keys into the ignition. The driver's door was open, so she reached in and grabbed the keys and ran across the street screaming for help—to no

avail. When she looked back, he was out of the car; he put on his baseball cap and walked to the corner of County and Julian. Shortly thereafter, Jody drove to a friend's house, told him that she had been "raped," and was taken to a hospital where she was examined.

The State presented other testimony including that of Jody's neighbor, who saw a black man enter through the window of Jody's house at about 3 p.m. Officer Tom Granger of the Waukegan police department testified regarding his interview with the victim at Victory Memorial Hospital in which she related similar facts. Sergeant Paul Hendley testified regarding two photographic arrays which he showed the victim. While Jody could not identify defendant from the first array, she did identify defendant from a later array containing a more current photograph of defendant. A stipulation showed that the examining physician, Dr. Michael Pepper, found bruises on the victim's left elbow, upper arm and left side of her neck. He found her labia to be red and swollen. The victim told him that she had been raped in her home by a black man. It was stipulated that William Wilson, a forensic chemist, would state that he performed tests in which the vaginal swab taken from Jody contained seminal fluid which was consistent with the blood type of defendant. He also detected the possible presence of saliva on the swab.

Defendant presented the testimony of alibi witnesses, one of whom was his uncle, Elsenior Parks. Elsenior and his sister Quilitine were visiting their sister Johnnie Chandler, defendant's mother, on May 25. Elsenior related the events of the day, which included defendant's presence at his mother's house at various times. Some of the testimony was corroborated by Dan Atherton, who shared Johnnie Chandler's home. The State sought to raise questions regarding the times when defendant might have been present at his mother's house. Defendant did not testify and does not challenge the guilty verdicts.

Following the entry of the verdicts of guilty, defendant's post-trial motion was denied, and he was sentenced as described above.

On appeal, defendant contends that his sentences should be vacated and the cause remanded for the imposition of new sentences because the mandatory consecutive sentence provision of section 5—8—4(a) of the Code is unconstitutional. First, defendant asserts that the provision is a violation of the constitutional requirement of equal protection of the law because the statutory classification is arbitrary and there is no "reasonable basis for distinguishing the class to which the law is applicable from the class to which it is not." See *People v. McCabe* (1971), 49 Ill. 2d 338, 341.

Second, defendant argues that the provision violates due process because it fails the "rational-basis" test. Under that test, in order to constitute a legitimate exercise of the police power, a " ' "legislative enactment must bear a reasonable relationship to the public interest intended to be protected, and the means adopted must be a reasonable method of accomplishing the desired objective." ' " (*People v. Lindner* (1989), 127 Ill. 2d 174, 180, quoting *People v. Wick* (1985), 107 Ill. 2d 62, 65-66, quoting *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 453.) Although defendant did not raise the constitutionality of the sentencing statute below, this issue may be raised for the first time on appeal. *People v. Bryant* (1989), 128 Ill. 2d 448, 454.

The consecutive sentencing provisions state in pertinent part:

"(a) *** The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or where the defendant was convicted of a violation of Section 12—13 or 12—14 of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively. Sentences shall run concurrently unless otherwise specified by the court.

(b) The court shall not impose a consecutive sentence except as provided for in subsection (a) unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." Ill. Rev. Stat. 1991, ch. 38, pars. 1005—8—4(a), (b) (now 730 ILCS 5/5—8—4(a), (b) (West 1992)).

Before beginning our analysis regarding the constitutionality of this provision, we first point out that our supreme court has determined that section 5—8—4(a) (amended effective July 1, 1988) is mandatory and requires the imposition of consecutive sentences if the statute applies to defendant. (*People v. Wittenmyer* (1992), 151 Ill. 2d 175, 196; accord *People v. Bole* (1993), 155 Ill. 2d 188, 196-97.) In *Wittenmyer*, the supreme court stated:

"After carefully reviewing the plain language of this section, we believe that the legislature has provided for *two exceptions* to the general rule that a trial court shall not impose consecutive sentences for offenses which were committed as part of a

single course of conduct during which there was no substantial change in the nature of the criminal objective. First, if one of the offenses for which defendant was convicted was a Class X or Class 1 felony *and* the defendant inflicted sever bodily injury, the legislature has mandated that the trial court impose consecutive sentences. Second, if the defendant was convicted of a violation of section 12—13 or 12—14 of the Criminal Code [*i.e.*, criminal sexual assault or aggravated criminal sexual assault], the legislature had mandated that the trial court must impose consecutive sentences." (Emphasis in original.) *Wittenmyer*, 151 Ill. 2d at 195-96.

### APPLICABILITY OF MANDATORY CONSECUTIVE SENTENCES
██ As a preliminary matter, we find that the statute is applicable to the defendant at least with respect to the commission of the three offenses of aggravated criminal sexual assault. These three offenses were committed as part of a single course of conduct, and the offenses were committed in a brief span of time as part of an episode that took place on the afternoon of May 25, 1991. Nevertheless, each separate act of sexual assault (penetration) for which defendant was found guilty constituted a separate criminal violation even though part of a single course of conduct. (See *People v. Bowen* (1993), 241 Ill. App. 3d 608, 630.) As to each of the sexual offenses, it is clear that the elements of each count were similar and there was no "substantial change in the nature of the criminal objective." With respect to the offense of home invasion, we determine that it was also committed as part of a single course of conduct; however, we leave it for the trial court to determine on remand whether there was "no substantial change in the nature of the criminal objective" when defendant committed the home invasion and the sexual offenses. This issue was not specifically briefed, and the trial court should have the opportunity to consider it in the first instance.

### EQUAL PROTECTION
Having determined that the statute is applicable to the defendant's course of conduct, we now consider whether this consecutive sentencing provision offends the principles of equal protection and due process. In deciding whether a statutory classification violates the principle of equal protection of the law, a reviewing court must begin with "the presumption that the classification is valid and must impose the burden of showing invalidity on the party challenging the classification." (*McCabe*, 49 Ill. 2d at 340.) In the exercise of the police

power, the State has broad latitude and discretion to establish a given classification, and "[i]f any state of facts may reasonably be conceived which would justify the classification, it must be upheld." (49 Ill. 2d at 341.) Additionally, when "the legislature creates a statute, it is not required to solve all the evils of a particular wrong in one fell swoop" but "may tailor a statute to the particular problem it is seeking to solve." *People v. Adams* (1991), 144 Ill. 2d 381, 391.

In the present case, defendant argues that the mandatory consecutive sentence classification has no reasonable basis for distinguishing the class to which the law is applicable from the class to which it is not. For example, defendant states that it does not include all Class 1 or greater felonies but only applies to Class X or Class 1 felonies where severe bodily injury was inflicted and to those involving criminal sexual assault or aggravated criminal sexual assault. Defendant further states that the only other offenses similarly singled out for receiving such consecutive sentences are those committed while the offender is imprisoned in the Department of Corrections, those committed while the offender is on pretrial release or detention for another felony or for escape. See Ill. Rev. Stat. 1991, ch. 38, pars. 1005—8—4(f), (g), (h) (now 720 ILCS 5/5—8—4(f), (g), (h) (West 1992)).

Defendant further urges that the provision is not targeted at all those to be sentenced for violent offenses or crimes such as aggravated arson, arson, home invasion, armed robbery, aggravated battery and the like so long as "severe bodily injury" is not involved. Nor does the mandatory provision seek to include all sex offenders, but excepts only those committing criminal sexual assault or aggravated criminal sexual assault. For example, other offenses not covered included keeping a place of juvenile prostitution, child pornography, exploitation of a child, juvenile pimping, solicitation for a juvenile prostitute, attempted aggravated criminal sexual assault and criminal sexual abuse—all of which are at least Class 1 felonies.

■ Defendant's argument fails because the principle of equal protection does not deny States the power to treat different classes of persons in different ways. The equal protection clause "requires equality between groups of persons 'similarly situated'; it does not require equality or proportionality of penalties for dissimilar conduct." *People v. Bradley* (1980), 79 Ill. 2d 410, 416.

The provision describes, by means of very specific characteristics, a class dissimilar to the classes of offenses iterated by defendant. The provision is limited in its application only to those offenders who have committed a Class X or Class 1 felony involving "severe bodily injury" *or* criminal sexual assault or aggravated criminal sexual assault

(Class 1 or Class X felonies). By definition, the offender would be dissimilarly situated from any other offender who committed the crimes enumerated in defendant's argument. It is clear that the legislature sought to differentiate only those crimes which were serious felonies *and* involved severe bodily harm to the person or a serious sexual invasion (penetration) of the person.

It was reasonable for the legislature to determine that all criminal sexual assaults should be equated with severe bodily harm to the person and that these offenses were distinguishable from all other offenses. The seriousness of the invasion of the person is the common denominator. With each act of sexual assault, "the victim's psychological constitution and most intimate part of her being have been violently invaded." (*People v. Segara* (1988), 126 Ill. 2d 70, 78 (discussing multiple acts of aggravated criminal sexual assault to the same victim during one episode).) Thus, it can be said that the statute is based on a state of facts reasonably conceived which justify the classification, and it must be upheld. Moreover, the classification is not arbitrary but based on particularly serious invasions of the person, and all those offenders similarly situated will be subject to consecutive sentencing upon the commission of multiple offenses during a single course of conduct where there is no substantial change in the criminal objective. This analysis leads us naturally to consider whether the statute bears a rational relationship to a legitimate legislative purpose under the due process analysis.

## DUE PROCESS

■ In order to satisfy the substantive due process requirement, the "classification of a crime and the penalty provided [must] be reasonably designed to remedy the evils which the legislature has determined to be a threat to public health, safety and general welfare." (*People v. Bowen* (1993), 241 Ill. App. 3d 608, 629, citing *People v. Steppan* (1985), 105 Ill. 2d 310.) The purpose of the statute is to deter the commission of further offenses once an initial offense has been completed; more specifically in this case, it is to deter further assaults or repeated violations against a victim. (*Bowen*, 241 Ill. App. 3d 608; *People v. Bole* (1991), 223 Ill. App. 3d 247, 258.) We conclude, as did the *Bowen* court, that where the defendant commits multiple assaults against the victim, he must receive consecutive sentences for each violation and the imposition of such consecutive sentences does not violate due process. The imposition of consecutive sentences is rationally related to the legislative intent of deterring further assaults. *Bowen*, 241 Ill. App. 3d 608.

The statute has a deterrent purpose similar to that of provisions requiring consecutive sentences where the offenses were committed while the offender is imprisoned or on pretrial release or detention for another felony, or for escape. We do not believe there is a true question of proportionality presented because the provision does not itself specify any particular range of years of imprisonment. Moreover, defendant has not provided sufficiently clear and specific examples of how the principle of proportionality is violated by the statute. He only alleges generally that the principle is violated. In any case, the degree of physical harm to the victim is sufficient to distinguish this class of offenses from all others to warrant the consecutive terms.

■ In view of the foregoing, we hold that under the circumstances presented, section 5—8—4(a) of the Code satisfies the requirements of equal protection and substantive due process. Because the trial court imposed a combination of concurrent and consecutive sentences which appear to be inconsistent with the statute and for which there is no explanation in the record, we vacate the sentences so that the court may impose *de novo* new sentences consistent with our determination here. As a minimum, defendant is subject to three consecutive sentences stemming from the three aggravated criminal sexual assaults. The trial court must determine whether the home invasion offense qualifies as an offense mandating yet another consecutive sentence or whether that offense merits a concurrent sentence. In fashioning the new sentences, the trial court should of course be mindful of the limitations on maximum consecutive sentences. See Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(c)(2) (now 730 ILCS 5/5—8—4(c)(2) (West 1992)).

The trial court is also directed to make a clear record of the reasons for its findings and determinations in imposing the sentences. When a record does not provide a reviewing court with means sufficient to determine on what basis the court fixes a particular sentence, the reviewing court may find an abuse of discretion. *People v. Fort* (1992), 229 Ill. App. 3d 336, 340; *People v. Bergman* (1984), 121 Ill. App. 3d 100, 109.

The defendant's convictions are affirmed, and the sentences are vacated; the cause is remanded with directions to the court to impose sentences anew.

Affirmed in part; vacated in part and remanded with directions.

GEIGER and BOWMAN, JJ., concur.