THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL GUZMAN, Defendant-Appellant.

First District (6th Division)   No. 1—93—0191

Opinion filed December 1, 1995.

Joseph A. Ettinger, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and James S. Beligratis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE EGAN delivered the opinion of the court:

After a bench trial, the judge found the defendant, Daniel Guzman, guilty of four counts of aggravated criminal sexual assault, one count of armed robbery and one count of burglary and sentenced the defendant to a total of 24 years' imprisonment: six years for each count of aggravated criminal sexual assault, to run consecutively, and six years for armed robbery, to run concurrently with the sentences for the other charges.

A.W. testified that, at approximately 5:35 a.m. on July 30, 1991, she was with Shawn Collins at Rainbow Beach, at 79th Street and Lake Shore Drive in Chicago. They had arrived at the beach at about 3 a.m. in a four-door car. They each had one drink, had sexual intercourse and fell asleep in the back seat of the car. A.W. had also smoked some marijuana.

They awakened when two Hispanic males and one black male broke a rear window of the car. One of the Hispanic males was the defendant; the other two men were not identified. The defendant was on the passenger side of the car, and the other two men were on the driver's side. Each of the men had a tree branch approximately three feet long and three inches in diameter.

The two men on the driver's side of the car broke the front window on that side with the tree branches and unlocked the front door on the driver's side. Collins jumped to the front seat of the car. Someone unlocked the front door on the passenger's side of the car, and the defendant began hitting Collins with a tree branch from that side. The other two men did the same with their branches.

The black male then demanded money and said that someone was going to have to give up something. The defendant asked for Collins' wallet, leather jacket and belt, and the black male demanded to

have sex with A.W. The three men continued hitting Collins from both sides of the car, and the black male and Hispanic male pulled Collins out of the car on the driver's side. Shortly afterward, the black male pulled A.W. from the back seat of the car by her hair and told her that she would have to have sex with him.

The black male pulled her by her arm to a nearby wooded area. He still had the tree branch, and A.W. believed the three men were going to kill her and Collins. In the wooded area, she pulled down her pants, and he told her again that she would have to have sex with him. At this time, the defendant and the other Hispanic male were with Collins, who was in the car. A.W. lay on the ground on her back, and the black male inserted his penis into her vagina. The other Hispanic male (not the defendant) joined A.W. and the black male in the wooded area. The Hispanic male unzipped his pants and placed his penis in her mouth. He then changed positions with the black male. He placed his penis in A.W.'s vagina, and the black male placed his penis in her mouth. At that time, she heard someone start her car and drive it away from the area. She also saw two Hispanic females standing five feet from her. Neither of these women was Julie Vasquez.

The defendant ran to the wooded area and told the black male that they should leave because Collins had escaped, and the police would be coming. When the defendant said this to the black male, the black male had his penis in A.W.'s vagina again. The defendant, the black male, the Hispanic male and the two Hispanic women ran to a brown station wagon and drove away from the beach. A.W. picked up a tree limb and a brick and walked down the middle of 79th Street to look for help. She had just reached a telephone when Collins and the police found her.

A.W. identified the defendant from a picture she saw in the police station. She could not remember telling the police that each of the three men had a tree branch or that the black male had had sexual intercourse with her twice.

Collins' testimony was almost the same as A.W.'s. Like A.W., he testified that each of the three men had tree limbs, which he described as being 2½ feet long with a four-inch diameter. The three men beat him with the tree limbs and their hands.

The three men asked Collins for money. When he responded that he did not have any, the black male said, "Somebody going to have to give up some money or something or some pussy." Collins gave the defendant his wallet, and he gave the other Hispanic male his leather jacket and belt, which the Hispanic male used to beat Collins.

Collins explained that he knew the defendant because he and his

wife had lived next door to the defendant. During the assault and robbery, he asked the defendant if he recognized him. The defendant told him to be quiet because, if he were quiet, the other men "probably" would not kill Collins.

He further testified that the black male was holding one of the tree limbs as he pulled A.W. out of the car and took her to the wooded area. The Hispanic male joined them in the wooded area, leaving the defendant with Collins, who was sitting in the front seat of the car. The defendant was holding a tree limb at this time. Collins started the car, pushed the defendant aside and drove away from the beach with the defendant chasing him. Collins drove to a gas station and asked the attendant to call the police. When the police arrived he entered their car, and they drove to Rainbow Beach. On the way there, they found A.W., who was hysterical.

Officer Cornell Webb testified that he was one of the officers who responded to Collins' call. When he found Collins at the gas station, Collins was bleeding from the left side of his head and had bruises and other lacerations. Collins told him that he had been beaten and robbed and that A.W. was being sexually assaulted on the lake front. They found A.W. walking in the street. She said she had just been raped and that three men were involved. Two Hispanic females, one who looked 18 years old and was 5 feet 3 inches tall, had stood by during the rape. Collins told Webb that he knew one of his attackers and gave Webb the name "Danny" and Danny's address.

Officer Webb admitted that his report said the attackers had wood sticks, not tree branches. The report did not contain a description of the sticks, but it did indicate that there was more than one stick. He was not sure whether Collins and A.W. had told him that each of the three men had a tree branch.

Detective Andrew Jones, Jr., testified that he was present when the defendant gave his statement to the assistant State's Attorney, and he read this statement into the record. The defendant stated that he was in a car with Julie Vasquez when he heard some glass breaking. He left the car to investigate the sound and saw a Mexican male standing next to Collins, who was standing next to a car. A black male was pulling a woman out of the car. The Mexican punched Collins in the face, and the black male said to the woman, "[Y]ou are going to give me the pussy." The Mexican told the defendant to come closer, and the defendant walked toward them until he was seven feet from the Mexican male and Collins.

The defendant told Collins to give the Mexican whatever he wanted. The black male took the woman to some bushes. The Mexican male took Collins' leather jacket and also went to the bushes. Collins then drove away, and the defendant left.

Jones testified that A.W. had told him her attackers had used a long and big tree branch. There was nothing in his report that indicated either she or Collins had said there was more than one branch. Neither A.W. nor Collins had told him that the defendant had held a tree branch.

The defendant was the only witness who testified on his behalf. His testimony was essentially the same as his statement to the assistant State's Attorney. He repeated that he was at the beach with Julie Vasquez, but added that, earlier that morning, he had also been with someone named Nancy.

He also explained that he had followed the Hispanic male's order to come closer because he was scared, although he did not see that the Hispanic male or the black male had any weapons. These two men were bigger than he was, and he felt his life was in danger. He did not know these two men, did not take anything from A.W. or Collins and did not see A.W. being raped. He did not know A.W., but he knew Collins and had had verbal fights with him. He told Collins to give the Hispanic male his jacket to prevent this man from hitting Collins.

Contrary to his statement and to testimony by the State's witnesses, the defendant testified that the Hispanic male assisted the black male in pulling A.W. to the wooded area and that Collins drove away in the car once the Hispanic male went to the wooded area.

In rebuttal, Julie Vasquez testified that she had been at her house with the defendant, Nancy Abeta and a black male on the evening of July 29, 1991. The defendant, however, left her house at 2 a.m. on July 30, and she did not see him again that morning. She was 19 years old at the time and 5 feet 3 inches tall.

She admitted telling the police and an assistant public defender that she was with the defendant at Rainbow Beach at 5 a.m. and that they heard a window break. She told them that she saw a black male and a Mexican male pull a woman from a car and take her to some bushes. She also told him that the Mexican male told the defendant to come closer. She testified, however, that these statements were false and that she had only made them because she was scared of the defendant and his friends. The defendant's uncle had taken her to the police station to make these statements, and the defendant and his mother had taken her to talk to the assistant public defender. The defendant had told her what to say to the police. A few days after she made the false statements, however, she called the police and an assistant public defender and told them that her statements to them had been false.

Under an accountability theory, the judge found the defendant

guilty of armed robbery, burglary and four counts of aggravated criminal sexual assault based on four separate acts of sexual penetration: (1) vaginal penetration by the Hispanic male, (2) oral penetration by the Hispanic male, (3) vaginal penetration by the black male and (4) oral penetration by the black male.

The judge denied the defendant's motion for a new trial. Before sentencing the defendant, the judge heard arguments in aggravation and mitigation. The State argued that the defendant's offense was serious. The defense argued that the defendant was only 20 years old, had completed high school, had strong family ties and had no arrest record. The judge sentenced the defendant to six years for each count of aggravated criminal sexual assault, to run consecutively, and six years for armed robbery, to run concurrently with the other sentences. At the sentencing hearing and the hearing on the defendant's motion for reconsideration of his post-trial motion, the judge stated that he did not believe that this 24-year sentence was warranted and that, if he had the discretion to impose his own sentence, he would sentence the defendant to 12 to 15 years.

We first address the defendant's argument that the evidence was insufficient to sustain his convictions for aggravated criminal sexual assault and armed robbery because the facts did not show beyond a reasonable doubt that he was armed with a dangerous weapon. When there is a challenge to the sufficiency of the evidence, a reviewing court's inquiry is limited to considering "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Campbell* (1992), 146 Ill. 2d 363, 374, 586 N.E.2d 1261 (affirming the defendant's conviction after a bench trial).

To be guilty of armed robbery, the State must show that the defendant committed a robbery and "carrie[d] on or about his or her person, or [was] otherwise armed with a dangerous weapon." (Ill. Rev. Stat. 1991, ch. 38, par. 18—2 (now 720 ILCS 5/18—2 (West 1992)).) Similarly, a person is guilty of aggravated criminal sexual assault when he has committed criminal sexual assault and "displayed, threatened to use, or used a dangerous weapon or any object fashioned or utilized in such a manner as to lead the victim under the circumstances reasonably to believe it to be a dangerous weapon." Ill. Rev. Stat. 1991, ch. 38, par. 12—14 (now 720 ILCS 5/12—14 (West 1992)).

The defendant does not argue that the State failed to prove the elements of robbery or criminal sexual assault; he argues only that the State failed to prove the aggravating factor that the defendant

used a dangerous weapon. He contends that the evidence was insufficient to prove beyond a reasonable doubt that he was armed with a tree branch or that the tree branches were dangerous weapons.

■ According to the defendant, the State did not prove that he was armed with one of the tree branches because A.W. testified that she did not tell the police that her attackers had tree branches. This characterization of her testimony is inaccurate. A.W. testified that she told the police her attackers had sticks but that she could not *remember* whether she had told the police they had tree branches. There was other sufficient evidence to support a finding by the judge that the defendant was holding a tree branch during the commission of the crimes in this case. Collins and A.W. both testified that each of the three men who attacked them had a tree branch. Officer Jones testified that A.W. said that her attackers had sticks, and Detective Webb testified that she said her attackers had used a tree branch.

Even without the evidence that the defendant himself was holding a branch, under an accountability theory, the judge could have found the defendant guilty of armed robbery or aggravated criminal sexual assault based on the evidence that one of the other two men with him had a tree branch. See *People v. Green* (1988), 179 Ill. App. 3d 1, 15, 535 N.E.2d 413 ("Evidence that a defendant voluntarily attaches himself to a group bent on illegal acts which are dangerous or homicidal in character, or which will probably or necessarily require the use of force and violence that could result in the taking of life unlawfully, makes him criminally liable for any wrongdoings committed by the other members of the group in furtherance of the common purpose, or as a natural or probable consequence thereof, even though he did not actively participate in the overt act itself").

The evidence also supports the judge's finding that the tree branches were dangerous weapons. The defendant argues that tree branches were not used as dangerous weapons and were incapable of being used as dangerous weapons because A.W. never testified that she felt threatened by the tree branches; A.W. was never touched by the branches; and the branches were only three inches in diameter.

For purposes of the armed robbery and aggravated criminal sexual assault statutes, however, an object may be a dangerous weapon if it is used "in a manner dangerous to the well-being of the individual threatened." (*People v. Charles* (1991), 217 Ill. App. 3d 509, 512, 577 N.E.2d 534 (aggravated criminal sexual assault); see also *People v. Lindsay* (1994), 263 Ill. App. 3d 523, 635 N.E.2d 551 (armed robbery).) In fact, the aggravated criminal sexual assault statute merely requires the defendant to have used an object in such a manner that the victim reasonably believed it was dangerous. Ill. Rev. Stat. 1991, ch. 38, par. 12—14 (now 720 ILCS 5/12—14 (West 1992)).

■ The defendant is incorrect in asserting that the State did not present any evidence that a dangerous weapon was used in the commission of the offenses in this case. The testimony of both A.W. and Collins indicates that their attackers used the tree branches in a manner that was dangerous to their well-being and that A.W. had a reasonable belief that the tree branches were dangerous weapons. They both testified that the attackers broke the windows of the car where they were sleeping with the tree branches. They then began to beat Collins with the branches, and, when the black male dragged A.W. to the wooded area, he was carrying a branch. A.W. testified that she thought the attackers would kill her and Collins. Collins also had reason to believe his and A.W.'s lives were in danger because the defendant told him that, if he were quiet, the other two men probably would not kill him.

Contrary to the defendant's argument, the fact that there was no evidence that A.W.'s attackers touched her with the tree branches does not prove that the branches were not dangerous weapons. Neither the armed robbery nor the aggravated criminal sexual assault statute requires that the victim actually be injured for an object to be classified as a dangerous weapon. *Lindsay*, 263 Ill. App. 3d at 529; *Charles*, 217 Ill. App. 3d at 514.

Based on the record, therefore, it was reasonable for the judge to have concluded that a dangerous weapon was used in the commission of the robbery and criminal sexual assault in this case. We hold that the evidence was sufficient to support the defendant's convictions for armed robbery and aggravated criminal sexual assault.

■ We now turn to the defendant's arguments that his sentence was improper. He contends that consecutive sentences for the four counts of aggravated criminal sexual assault were improper for the following reasons: (1) the acts for which he was convicted did not arise out of a single course of conduct; (2) he was found guilty of aggravated criminal sexual assault under an accountability theory; (3) the consecutive sentencing statute violates the proportionate penalties provision of the Illinois Constitution; and (4) this statute violates the due process and equal protection provisions of the Illinois and United States Constitutions.

Section 5—8—4 of the Unified Code of Corrections provides in relevant part:

> "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant

inflicted severe bodily injury, or where the defendant was convicted of a violation of Section 12—13 or 12—14 of the Criminal Code of 1961." (730 ILCS 5/5—8—4 (West 1992).)

In *People v. Bole* (1993), 155 Ill. 2d 188, 613 N.E.2d 740, the Illinois Supreme Court held that, for cases involving criminal sexual assault or aggravated criminal sexual assault, consecutive sentences are mandatory only when committed as part of a single course of conduct.

The defendant argues that the aggravated criminal sexual assault counts in this case did not arise out of a single course of conduct because they were committed by two separate individuals, the Hispanic male and the black male, and were separated by time. In addition, the judge did not make a finding that these acts were part of a single course of conduct.

The appropriate test for determining what constitutes a single course of conduct under section 5—8—4 is somewhat unclear. In *People v. Harris* (1991), 220 Ill. App. 3d 31, 32, 580 N.E.2d 903, citing *People v. Ingram* (1980), 84 Ill. App. 3d 495, 405 N.E.2d 864, the court stated that

> "[t]he test to be used in determining whether a particular offense is part of a single course of conduct, during which there was no substantial change in the nature of the criminal objective, is the independent motivation test; that is, were the defendant's acts independently motivated?"

Given the supreme court's subsequent decision in *Bole*, however, it is uncertain whether *Harris* states the proper test for determining a single course of conduct under section 5—8—4. In *Bole*, the supreme court stated that it was unclear whether the statutory language "during which there is no substantial change in the nature of the criminal objective" was meant to define, limit or merely describe the phrase "single course of conduct." (*Bole*, 155 Ill. 2d at 193 (holding that it was not necessary to decide the meaning of this phrase because there was no change in criminal objective in the case before it; the defendant in that case had been charged with only multiple offenses of the same crime).) After *Bole*, the court in *People v. Toliver* (1993), 251 Ill. App. 3d 1092, 623 N.E.2d 880, decided that the existence of a change in criminal objective would determine whether consecutive sentences were mandated under the statute. *Toliver*, 251 Ill. App. 3d at 1098 (despite a finding that three offenses of criminal sexual assault and an offense of home invasion were part of a single course of conduct, the court remanded the case for a determination as to whether there was a change in criminal objective between the commission of the home invasion and the sexual offenses).

■ Under any of the tests applied by these courts, we believe that

consecutive sentences were appropriate under section 5—8—4. The defendant asserts that we should apply the independent motivation test. He argues that, under this test, there could be no single course of conduct in this case because the acts of sexual assault were necessarily independently motivated because they were committed by two different individuals. The defendant offers us and we have found no case in which a court has found the mere fact that acts were performed by two different offenders dispositive in determining whether these acts were part of a single course of conduct.

In cases in which courts have addressed the issue of whether the acts of multiple offenders were part of a single course of conduct, courts focus on evidence of differences in the offenders' criminal objectives rather than the fact different people performed the criminal acts. For example, in *People v. Lott* (1978), 57 Ill. App. 3d 706, 373 N.E.2d 466, the defendants were convicted of the murders of two men during a robbery. Lott committed both murders and defendant Cotton was convicted on an accountability theory. Under section 5—8—4, the court held that Lott's sentences should be consecutive because there was a change in his criminal objective: he did not form the intent to kill one victim until he had killed the other victim. Cotton's sentences were properly concurrent, however, because he intended only to commit a robbery and was unaware that Lott intended the murders. (*Lott*, 57 Ill. App. 3d at 711; see also *People v. Lindsay* (1978), 67 Ill. App. 3d 638, 384 N.E.2d 793 (the sentences three defendants received for the murders of two victims and the attempted murder of a third victim were properly consecutive, not because the victims had been shot by different defendants, but because the defendants had a different purpose for wanting each of the victims dead).) In contrast to these cases, there is no evidence in this case of a change or difference in the criminal objectives of the Hispanic male and the black male. There is no evidence that, during the four acts of sexual penetration of A.W., either one intended anything but a forcible sexual assault on A.W.

Case law supports the judge's conclusion that the acts of sexual assault in this case were part of a single course of conduct. Several courts have held that separate acts of penetration during a single sexual assault are part of a single course of conduct. (See, *e.g., People v. Norfleet* (1994), 259 Ill. App. 3d 381, 394, 630 N.E.2d 1231, citing *People v. McDade* (1991), 219 Ill. App. 3d 317, 579 N.E.2d 1173, and *People v. Lipscomb* (1991), 215 Ill. App. 3d 413, 574 N.E.2d 1345.) This is true even when the acts of sexual penetration involve different victims. See *People v. Embry* (1993), 249 Ill. App. 3d 750, 619 N.E.2d 246 (the acts of sexual contact between the defendant and his two victims occurred in the same place within the same time period).

Consequently, we cannot accept the defendant's argument that the separate acts of penetration in this case were not part of a single course of conduct because they were separated by time. The record indicates that the four acts of sexual penetration involved the same victim, occurred in the same location and occurred simultaneously or within minutes of one another.

The cases the defendant cites in support of his argument that the acts of sexual penetration in this case were not part of a single course of conduct are distinguishable from his case. In *Bole*, the court held that the acts were not part of a single course of conduct because they occurred on three different days with "substantial interruptions in time." (*Bole*, 155 Ill. 2d at 194.) As we have said, there was little, if any, time between the acts of sexual penetration in the case before us.

In *Harris*, the court found that a residential burglary and an armed robbery were not part of a single course of conduct because the defendant changed his criminal objective from an intent to commit a residential burglary to an intent to commit an armed robbery. (*Harris*, 220 Ill. App. 3d at 33.) The defendant in the case before us did not receive consecutive sentences for offenses involving two different crimes; his consecutive sentences were for four counts of aggravated criminal sexual assault. There was, therefore, no change in criminal objective in this case as there was in *Harris*. The offenders in this case did not intend to commit any crime other than aggravated criminal sexual assault as they performed the acts for which the defendant received consecutive sentences.

We also reject the defendant's assertion that we should remand the case for a finding by the judge that the aggravated criminal sexual assault offenses arose out of a single course of conduct. Courts have remanded cases on the consecutive sentencing issue for a determination as to whether offenses arose out of a single course of conduct. See *People v. Edwards* (1994), 259 Ill. App. 3d 151, 630 N.E.2d 1266; *Toliver*, 251 Ill. App. 3d at 1098.

■ We do not believe a remand is necessary in this case, however, because, unlike *Edwards* and *Toliver*, the record supports a conclusion that the trial judge did make a determination that the aggravated criminal sexual assaults arose out of a single course of conduct. Before imposing consecutive sentences, the judge heard arguments from the parties concerning whether the offenses were part of a single course of conduct. He then stated, "In my reading of the statute, I believe I do have to impose consecutive sentences for sex offenses. But my reading of the statute would indicate I should not impose consecutive sentences for the armed robbery portion, because in this case you had a different victim."

Moreover, in *Toliver*, the court remanded the case for a determination only as to whether there was a change in criminal objective between the commission of a home invasion offense and the three sexual offenses. The court did not remand the case for a determination as to whether there was a change in criminal objective during the commission of the three sexual offenses because it decided that it was clear there was no change in criminal objective during these offenses. (*Toliver*, 251 Ill. App. 3d at 1098.) We believe it is equally clear in this case that there was no change in criminal objective during the commission of the aggravated criminal sexual assault offenses for which the defendant received his consecutive sentences.

We also reject the defendant's argument that section 5—8—4 does not apply to those found guilty of aggravated criminal sexual assault under an accountability theory. In *People v. Sangster* (1982), 91 Ill. 2d 260, 437 N.E.2d 625, the supreme court held that this section applies to a defendant convicted of a Class X or Class 1 felony under an accountability theory. The court reasoned that the legislature was presumed to know of decisions holding defendants legally accountable for the conduct of others they aid in the commission of an offense, and, therefore, it would have included language excepting these defendants from the application of section 5—8—4 if it had intended to do so. *Sangster*, 91 Ill. 2d at 265.

The defendant asserts that the *Sangster* holding does not apply to this case because section 5—8—4 has been amended since *Sangster* and because the defendant in that case was not convicted of aggravated criminal sexual assault. When the supreme court decided *Sangster*, section 5—8—4 read:

> "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, in which event the court may enter sentences to run consecutively." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(a).)

In 1988, the legislature added offenses under section 12—13 and 12—14 to the offenses to be excepted from the general rule that a court should not impose consecutive sentences. The legislature also made consecutive sentences for these offenses mandatory rather than discretionary by changing the word "may" to "shall." *Bole*, 155 Ill. 2d at 196.

■ We do not believe these amendments affected the *Sangster* holding, which does not concern the mandatory or discretionary

nature of the statute or consecutive sentences for sexual assaults. We believe, however, that it is reasonable to extend the *Sangster* holding to defendants convicted under an accountability theory of an offense under section 12—13 or 12—14. Like Class X and Class 1 felonies, offenses under section 12—13 or 12—14 are offenses the legislature intended to except from the general rule against consecutive sentencing. We must presume that the legislature was aware of the *Sangster* interpretation of section 5—8—4 (see *People v. Hickman* (1994), 163 Ill. 2d 250, 644 N.E.2d 1147) and, had it intended to make this section inapplicable to defendants accountable for a section 12—13 or 12—14 offense, it could have expressly excluded these defendants when it amended the statute in 1988.

We now turn to the defendant's constitutional arguments. In considering constitutional challenges to a statute, any doubt concerning the statute's constitutionality must be resolved in favor of its validity, if reasonably possible. (*People v. Williams* (1994), 263 Ill. App. 3d 1098, 638 N.E.2d 207.) The party challenging the unconstitutionality of a statute must clearly establish the constitutional violation. *People v. Bales* (1985), 108 Ill. 2d 182, 483 N.E.2d 517.

The defendant argues that section 5—8—4 violates article I, section 11, of the Illinois Constitution of 1970, which provides in relevant part: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, § 11.) He claims that section 5—8—4 is unconstitutional because "[a]ggravated criminal sexual assault convictions arising out of several courses of conduct are more serious offenses than aggravated criminal sexual assaults arising out of a single course of conduct." He asserts that the former involve a greater risk of bodily harm and are more frequent because they involve more victims and a greater time period.

■ The defendant's observations are not necessarily true, and he offers no support for them. Contrary to the defendant's assertion, for example, sexual assaults committed during a single course of conduct may involve more than one victim (see, *e.g., Embry*, 249 Ill. App. 3d at 767), while sexual assaults involving more than a single course of conduct may involve only one victim (see, *e.g., Bole*, 155 Ill. 2d at 193-94).

Furthermore, we have already determined in *People v. Williams*, 263 Ill. App. 3d at 1104-05, that section 5—8—4 does not violate the proportionate penalties clause. As we reasoned in *Williams*, it is the legislature's role, not the courts', to investigate the evils facing society and to determine punishments for these evils according to their

seriousness. (*Williams*, 263 Ill. App. 3d at 1104.) Only if the sentence is so cruel, degrading or wholly disproportionate that it shocks the moral sense of the community may we find that it is unconstitutional under article I, section 11. *Williams*, 263 Ill. App. 3d at 1104, citing *People v. Gonzales* (1962), 25 Ill. 2d 235, 184 N.E.2d 833.

The harm from a given act of sexual penetration is no less for the victim of multiple acts of penetration during a single course of conduct than for a victim of an act of sexual penetration that occurs as part of more than one course of conduct. As the court stated in *People v. Segara* (1988), 126 Ill. 2d 70, 533 N.E.2d 802, each act of sexual penetration is " 'readily divisible and intensely personal' " to the victim. (*Segara*, 126 Ill. 2d at 77, quoting *Pruitt v. State* (1978), 269 Ind. 559, 565, 382 N.E.2d 150, 154.) The legislature chose to address the harm to a victim of multiple acts of sexual penetration during a single assault by making consecutive sentences mandatory for each act. The legislature did not necessarily impose a less serious penalty for acts of sexual penetration that do not occur during a single course of conduct. As the *Bole* court explained, "the legislature simply declined to eliminate the discretion available in this situation, while leaving it intact in the other." *Bole*, 155 Ill. 2d at 198.

Our courts have also rejected equal protection and due process challenges, such as the defendant's, to the consecutive sentencing statute. (See *Williams*, 263 Ill. App. 3d at 1102-04 (rejecting due process and equal protection challenges); *Toliver*, 251 Ill. App. 3d at 1098-1101 (rejecting due process and equal protection challenges); *People v. Bowen* (1993), 241 Ill. App. 3d 608, 609 N.E.2d 346 (rejecting a due process challenge).) The defendant argues that these cases are inapplicable to his constitutional challenge because the courts did not specifically address his argument that section 5—8—4 is unconstitutional because it "punishes multiple sexual offenders less stringently than one[-]time sexual offenders." We believe, however, that the reasoning and holdings of the courts in *Williams*, *Toliver* and *Bowen* apply to the defendant's case.

■ Section 5—8—4 involves no fundamental right or suspect class and, therefore, does not violate equal protection or substantive due process if it has a rational relationship to a legitimate State goal. (*Williams*, 263 Ill. App. 3d at 1102, citing *People v. Shephard* (1992), 152 Ill. 2d 489, 605 N.E.2d 518; *People v. Windsor* (1993), 242 Ill. App. 3d 1030, 611 N.E.2d 596.) The purpose of section 5—8—4 is to deter further offenses against a sexual assault victim once a defendant has committed an initial offense. (*Toliver*, 251 Ill. App. 3d at 1100; *Bowen*, 241 Ill. App. 3d at 630.) This is a legitimate goal because these further offenses involve a serious invasion of the person. (See *Toliver*,

251 Ill. App. 3d at 1100.) As the court stated in *Segara*, with each act of penetration, "the victim's psychological constitution and most intimate part of her being have been violently invaded." (*Segara*, 126 Ill. 2d at 78.) By imposing consecutive sentences for such further assaults, the provision is rationally related to the goal of deterring such a serious personal invasion.

The defendant argues that the provision does not bear a rational relationship to this goal because sex offenders who commit multiple offenses that are not part of a single course of conduct are punished less severely because they may receive concurrent sentences. The consecutive sentences for offenses that are part of a single course of conduct, however, are rationally related to the goal of preventing the serious invasion of the person that results from repeated acts of sexual assault during a single assault. Assaults that do not occur as part of a single course of conduct may involve a single act of assault against different victims at different times or multiple assaults against the same victim at different times. Separate assaults that do not occur during a single course of conduct, therefore, may or may not involve as serious an invasion of the victim's person as repeated acts of assault during a single course of conduct. Consequently, it was reasonable for the legislature to leave it to the discretion of the sentencing judge to decide whether to impose consecutive sentences for sexual offenses that are not part of a single course of conduct, while mandating consecutive sentences for sexual offenses that do occur as part of a single course of conduct.

Moreover, "when 'the legislature creates a statute, it is not required to solve all the evils of a particular wrong in one fell swoop' but 'may tailor a statute to the particular problem it is seeking to solve.' " (*Toliver*, 251 Ill. App. 3d at 1099, quoting *People v. Adams* (1991), 144 Ill. 2d 381, 391, 581 N.E.2d 637.) It was, therefore, proper for the legislature to use section 5—8—4 to address the specific problem of multiple acts of sexual assault occurring during a single sexual assault without also addressing the evils of multiple acts of sexual assault that do not occur as part of a single course of conduct. For these reasons we reject the defendant's constitutional challenges to section 5—8—4.

Judgment affirmed.

McNAMARA, P.J., and ZWICK, J., concur.